**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 6 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MICHAEL SHANE JACKSON,

       Petitioner - Appellant,

    v.

CHARLES RAY, Warden, Davis
Correctional Facility,

       Respondent - Appellee.

No. 03-6053

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D. Ct. No. CIV-01-1778-C)**

Submitted on the briefs:

W.A. Drew Edmondson, Attorney General of Oklahoma, Preston Saul Draper,
Assistant Attorney General, Oklahoma City, Oklahoma, for the Respondent-
Appellee.

Thomas D. McCormick, Oklahoma City, Oklahoma, for the Petitioner-Appellant.

Before **TACHA**, Chief Circuit Judge, **BRISCOE**, Circuit Judge, and
**LUNGSTRUM**, Chief District Judge.[†]

---

    [†] Hon. John W. Lungstrum, Chief District Judge of the United States
District Court for the District of Kansas, sitting by designation.

**TACHA**, Chief Circuit Judge.

Petitioner-Appellant Michael Shane Jackson filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that a four and one-third-year delay between the filing of the information against him and his trial violated his Sixth Amendment right to a speedy trial. The District Court denied Mr. Jackson's petition for failing to establish prejudice. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

The State of Oklahoma incarcerated Mr. Jackson on a robbery conviction on September 12, 1995. Two weeks later, on September 27, 1995, the State issued an information and arrest warrant against Mr. Jackson, charging him with selling LSD. In February 1998, he was released from his robbery conviction on probation. While on probation, Mr. Jackson was enrolled in community college and employed.

The State took no action to enforce the LSD information during Mr. Jackson's incarceration for the robbery conviction. Rather, on April 13, 1998, approximately two months after his release on probation, the State executed the 1995 LSD arrest warrant. Because Mr. Jackson could not pay bond, he was held in pretrial detention from April 1998 until January 24, 2000, the date of his trial.

During this time, Mr. Jackson's trial was continued numerous times. As the

-2-

State now concedes, the record offers no explanation for these continuances, nor does it reveal who requested them. On May 18, 1999, Mr. Jackson filed a pro se motion in which he asserted, among other things, his Sixth Amendment right to a speedy trial. The State trial court did not address this motion until the day of trial, more than eight months after its filing. At that time, the court denied the motion, stating, "while I understand that [Mr. Jackson] feels that there are some fairness issues, . . . those are not legal issues, they do not have legal merit."

At trial, Mr. Jackson presented an entrapment defense, claiming that Jason Brown, a police informant, entrapped him. Mr. Brown, however, committed suicide in 1997, well before Mr. Jackson knew of the pending drug trafficking information. In lieu of Mr. Brown's testimony, Mr. Jackson himself testified that Mr. Brown entrapped him. During the course of this testimony, Mr. Jackson also stated that he was a drug addict at the time he sold the LSD. The state court properly instructed the jury that, if Mr. Jackson was ready and willing to sell LSD despite Mr. Brown's actions, then Mr. Jackson's entrapment defense should fail. The jury entered a verdict against Mr. Jackson, and the state trial court sentenced him to a prison term of twenty-one years.

Mr. Jackson appealed to the Oklahoma Court of Criminal Appeals ("OCCA"), raising, inter alia, the speedy trial claim. Over the vigorous dissent of Judge Chapel, the OCCA summarily dismissed the speedy trial claim. Mr.

Jackson then sought habeas relief from the federal courts. His petition was referred to a federal Magistrate Judge who found the OCCA majority opinion factually incorrect and legally erroneous. Nevertheless, the Magistrate Judge recommended denial of habeas relief after finding that Mr. Jackson's defense was not prejudiced by the delay. Similarly, the District Court, rehearing the habeas claim de novo, held that Mr. Jackson's defense was not prejudiced by the delay because the substance of Mr. Brown's potential testimony was speculative.

We granted Mr. Jackson a certificate of appealability on his speedy trial claim pursuant to 28 U.S.C. § 2253(c) . Mr. Jackson filed a pro se brief in this Court. We then appointed counsel for Mr. Jackson. After receiving the parties' briefs, we ordered the case to oral argument and requested additional briefing regarding the Supreme Court's opinion in *Doggett v. United States*, 505 U.S. 647 (1992). We acquiesced to the parties' joint request and unanimously determined to submit this case without oral argument. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

## II. STANDARD OF REVIEW

In habeas cases, we review the federal district court's legal conclusions de novo, applying the same review of the state court decision as the district court. *Morris v. Burnett* , 319 F.3d 1254, 1268 (10th Cir. 2003). We conduct an independent review of the state record as well. *Id.* If, however, the district court

-4-

made any independent factual findings outside the state record, we review those findings for clear error. *Id.*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-32, 110 Stat. 1214, governs this case. Pursuant to AEDPA, we must defer to a state court decision adjudicated on the merits unless that decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

Because the OCCA identified the appropriate legal principles in determining whether Mr. Jackson was denied his right to a speedy trial, our review is limited to whether the OCCA unreasonably applied those principles. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (internal quotations omitted).[1] A state court decision does not satisfy this

---

[1] We note that the Supreme Court published its decision in *Wiggins* after the completion of Mr. Jackson's OCCA appeal. AEDPA "limit[s] our analysis to the law as it was clearly established by [Supreme Court] precedents *at the time of the state court decision.*" *Wiggins*, 539 U.S. at 520 (internal quotations omitted) (continued...)

standard if it is merely " incorrect or erroneous. The state court's application must have been objectively unreasonable." *Id.* at 520-21 (internal citation omitted). In conducting an AEDPA analysis, we focus on the state court's decision, not its rationale. *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Our review, then, consists of whether the OCCA's denial of Mr. Jackson's speedy trial claim is objectively unreasonable in light of clearly established Supreme Court precedent.

While we focus on the OCCA's decision, we may nonetheless look to the OCCA's rationale to inform our review of the decision itself. In *Wiggins*, the Court considered whether Maryland's highest court unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), to defendant's ineffective assistance of counsel claim. 539 U.S. at 521. The Court, in conducting its unreasonable-application analysis, reviewed both prongs of the ineffective assistance test to determine whether the state court's finding on each was contrary to clearly established Supreme Court law, *id*. at 526-27, 535-36, or based upon facts that were clearly and convincingly erroneous in light of the state court

_____

[1](...continued)
(emphasis added). We cite *Wiggins*, however, not as an example of clearly established law relating to the substance of the speedy trial claim, but for guidance on the proper standards to apply on habeas review under AEDPA. *See id.* at 522 (holding that a habeas court can cite Supreme Court precedent issued after the relevant state court decision so long as it "made no new law in resolving" the underlying claim).

record, *id.* at 528 .

Following *Wiggins*, we conduct a similar review here. The Court, in *Barker v. Wingo*, 407 U.S. 514 (1972) , provides a four-part balancing test for speedy trial claims, which we discuss in more detail below. Because the OCCA's decision ultimately results from the balancing of these four factors, we cannot decide whether the OCCA's decision was objectively unreasonable without considering the relevant factors and the balancing of these factors. Therefore, we review the OCCA's finding on each of these four factors for the limited purpose of determining whether any finding is contrary to clearly established Supreme Court precedent or based upon facts that are clearly and convincingly erroneous in light of the state court record. Because speedy trial claims are subject to a balancing test, the fact that the OCCA may have made a finding on one or more of the factors contrary to clearly established Supreme Court precedent is insufficient to grant habeas relief. Habeas relief is only available if there is no possible balancing of the factors that both supports the OCCA's decision and is not contrary to clearly established Supreme Court precedent.

## III. DISCUSSION

Mr. Jackson argues that the four and one-third-year delay between the filing of the information against him and his date of conviction constitutes a violation of his Sixth Amendment right to a speedy trial. The Sixth Amendment to the

Constitution of the United States provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ." The Fourteenth Amendment incorporates the right to a speedy trial against the states. *Klopfer v. North Carolina*, 386 U.S. 213, 223-24 (1967).

The OCCA, in dismissing Mr. Jackson's speedy trial claim, reasoned in full:

> [W]e find that Appellant has not shown how he was prejudiced by the delays, nor did the record reflect that any prejudice resulted. *Stohler v. State*, 751 P.2d 1087, 1089 (Okla. Ct. Crim. App. 1988). Furthermore, Appellant has not shown that he timely and sufficiently raised the issue at trial nor has he shown that the reasons for the delay were solely attributable to the State. *Jackson,* F-2000-387, at 2.

The OCCA cited *Stohler*, which refers to the *Barker v. Wingo*, 407 U.S. 514 (1972), test; hence it identified the appropriate legal principles for adjudicating this claim.

The Supreme Court, in *Barker*, established the analysis for Sixth Amendment speedy trial cases. A Sixth Amendment speedy trial claim is assessed by balancing: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the delay prejudiced the defendant. *Id.* at 530. None of these factors, taken by itself, is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered

together with such other circumstances as may be relevant." *Id.* at 533.[2]

A.    Length of Delay

The first factor of the *Barker* test—length of the delay—is actually a dual inquiry. First, as a threshold matter, only if the delay is "presumptively prejudicial" need we inquire into the remaining *Barker* factors. *Barker*, 407 U.S. at 530. Second, "[i]f the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 652.

In examining the first prong of the delay factor, the Supreme Court has stated that "[d]epending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Doggett*, 505 U.S. at 652 n.1. The general rule is that the

_____

[2]In *Barker*, the Court characterized the right to a speedy trial as "a more vague concept than other procedural rights," which it approaches "on an ad hoc basis." *Barker*, 407 U.S. at 521, 530. Later rulings by the Court, however, clearly establish that the four *Barker* factors are the definitive factors when considering a speedy trial claim. *See, e.g., Doggett v. United States*, 505 U.S. 647, 651 (1992); *United States v. Loud Hawk*, 474 U.S. 302, 313-14 (1986); *United States v. MacDonald*, 435 U.S. 850, 858 (1978). Indeed, since *Barker*, the Court has never considered any other factor. In using the phrases "ad hoc" and "[n]either necessary [n]or sufficient" the *Barker* Court merely emphasized that in a particularly egregious case a defendant does not need to satisfy all four factors. *See, e.g., Moore v. Arizona*, 414 U.S. 25, 27 (1973) ("Barker v. Wingo expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial[.]").

speedy trial right attaches when the defendant is arrested or indicted, whichever comes first. *United States v. Marion*, 404 U.S. 307, 320-21 (1971).

Here, the State filed its information, the functional equivalent of an indictment, four and one-third years before bringing Mr. Jackson to trial. The Magistrate Judge found, and we agree, that the four and one-third-year delay is clearly sufficient to require consideration of the remaining *Barker* factors. *See Doggett*, 505 U.S. at 652. The State agrees as well, stating that "the time to measure 'postaccusation delay' in this case began to run on the date the information was issued, September 27, 1995."

Moreover, in considering the second part of the delay inquiry, we note a four and one-third-year delay far exceeds the "bare minimum" for "judicial examination of the claim." *Doggett*, 505 U.S. at 652. We therefore agree with the Magistrate Judge and weigh the delay factor in favor of Mr. Jackson.

B.      Reason for the Delay

The reason for the delay is the second prong in the *Barker* analysis. *Barker*, 407 U.S. at 530. The Supreme Court places the burden on the state to provide an inculpable explanation for delays in speedy trial claims. *Id*. at 531 (focusing its evaluation of the delay on "the reason the government assigns to

-10-

justify the delay"). [3] In this case, neither the State, Mr. Jackson, nor the record itself offers explanations for the delays; but the OCCA concluded that Mr. Jackson bore the burden and weighed the second *Barker* factor against him. *Jackson*, F-2000-387, at 2. Placing the burden on Mr. Jackson, however, is directly contrary to *Barker*. The OCCA therefore applied this *Barker* factor in an objectively unreasonable manner. *See Wiggins*, 539 U.S. at 521. The State, not Mr. Jackson, has the burden to show that the delay is justifiable.

Moreover, when the petitioner does not argue that the state deliberately delayed his trial and the state does not argue that the petitioner caused the delay – as occurs in this case – courts must conclude negligence on the part of the government and weigh the second *Barker* factor moderately against the state. *See Doggett*, 505 U.S. at 656-57; *Barker*, 407 U.S. at 531, 533-34; *Strunk v. United States*, 412 U.S. 434, 436 (1973). The State concedes this point. "[I]t is clear that when no such justification [for the delay] is offered that the factor is weighed in favor of the defendant and against the State." Finally, we note that the State's negligence is not mitigated by the fact that Mr. Jackson was incarcerated on a

---

[3] Although we have yet to observe this in a published opinion, every circuit court to address the question has held that *Barker* places the burden to explain the delay on the State. *See, e.g., McNeely v. Blanas*, 336 F.3d 822, 827 (9th Cir. 2003); *United States v. Brown*, 169 F.3d 344, 349 (6th Cir. 1999); *Jones v. Morris*, 590 F.2d 684, 686 (7th Cir. 1979); *Morris v. Wyrick*, 516 F.2d 1387, 1390 (8th Cir. 1975); *Georgiadis v. Superintendent, Eastern Correctional Facility*, 450 F. Supp. 975, 980 (S.D.N.Y.), *aff'd*, 591 F.2d 1330 (2d Cir. 1978).

previous charge for a portion of the delay.    *See Dickey v. Florida*, 398 U.S. 30, 36 (1970) (finding a Sixth Amendment speedy trial violation notwithstanding the State's argument that petitioner was in federal and state custody during the entire delay); *Smith v. Hooey*, 393 U.S. 374, 377 (1969) (there exists a constitutional duty to try defendants on pending charges regardless of whether they are in federal custody on unrelated charges).

Clearly established Supreme Court precedent, then, requires finding that the State was negligent in bringing Mr. Jackson to trial and that this negligence causes the second *Barker* factor to be weighed against the State.  Moreover, "the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows.  Thus, our toleration of such negligence varies inversely with its protractedness." *Doggett*, 505 U.S. at 657.  Given the duration of the delay in this case—four and one-third times longer than the "presumptively prejudicial" period—clearly established Supreme Court precedent requires that this *Barker*  factor weighs even more heavily against the State than would occur under a shorter negligent-delay scenario.

C.    Assertion of the Speedy Trial Right

Because Mr. Jackson asserted his speedy trial claim before the state trial court, the third   *Barker*  factor—whether the right to a speedy trial was asserted at trial—weighs against the State.  The OCCA found that     Mr. Jackson "ha[d] not

-12-

shown that he timely and sufficiently raised the [speedy trial] issue at trial." *Jackson,* F-2000-387, at 2; *but see id.* at 3 (Chapel, J., dissenting) ("[H]e timely asserted his right to a speedy trial."). Although federal courts presume that a state court's factual findings are correct unless rebutted by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), we agree with the Magistrate Judge that the state court record clearly and convincingly establishes that: (1) Mr. Jackson filed a pro se motion asserting his right to a speedy trial on May 18, 1999, which is in the state court record and date stamped by the Oklahoma trial court; and (2) the state trial court considered and denied the motion on January 24, 2000, before conducting voir dire.

In *Wiggins*, the Court faced a similar issue. There, the Supreme Court granted a writ of habeas corpus in part because the state appellate court relied on a key factual finding that was clearly contradicted by the state court record. 539 U.S. at 528 (finding that "the [Maryland] court based its conclusion, in part, on a clear factual error [which was] . . . , shown to be incorrect by 'clear and convincing evidence'" solely upon an examination of the state court record). Similarly, the OCCA's finding that Mr. Jackson failed to assert his Sixth Amendment right at trial is rebutted by clear and convincing evidence found in the state court record. *See* 28 U.S.C. § 2254(d)(2). Because clear and convincing evidence in the state court record establishes that Mr. Jackson timely asserted his

right to a speedy trial in the Oklahoma trial court, we must weigh this factor against the State.

We recognize that, in general, the sooner a criminal defendant raises the speedy trial issue, the more weight this factor lends to his claim. *See Barker*, 407 U.S. at 534-35. We will not fault a defendant, however, for failing to assert his speedy trial right before learning of the pending information or indictment against him. *See Doggett*, 505 U.S. at 654. Here, Mr. Jackson, appearing pro se, asserted his speedy trial rights on May 6, 1999, approximately five months after the first continuance of his trial date and some eight months prior to trial. The Magistrate Judge found, and we agree, that "[t]here is no evidence that [Mr. Jackson] knew about the arrest warrant prior to its execution. Likewise, there is no evidence that any subsequent action, or inaction, by [Mr. Jackson] was contrary to his May, 1999, assertion of his right to a speedy trial." Hence, Mr. Jackson timely filed his motion.

D. Prejudice

The OCCA held that Mr. Jackson "has not shown how he was prejudiced by the delays, nor did the record reflect that any prejudice resulted." *Jackson,* F-2000-387, at 2; *but see id.* at 5 (Chapel, J., dissenting) ("Brown's testimony would have been highly relevant to Jackson's claim on entrapment. Jackson's defense was impaired by the delay."). This fourth *Barker* factor, whether the

delay prejudiced the petitioner, can be met in two ways: with or without a particularized showing of prejudice. We address these mechanisms of establishing prejudice in turn.

1.      *Without a Particularized Showing of Prejudice*

In cases of extreme delay, criminal defendants need not present specific evidence of prejudice. Instead, they may rely on the presumption of prejudice created by the delay. *Doggett,* 505 U.S. at 655. Here, Mr. Jackson argues that the state's culpability for, and the length of, the four and one-third-year delay places this case within the ambit of the *Doggett* rule. We disagree.

In *Doggett,* the Court held that a delay of eight and one-half years, of which the government was responsible for approximately six years, relieved the defendant of the need to make a particularized showing of prejudice. *Id.* at 657. The Court held that "[w]hen the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review [i.e., six years], and when the presumption of prejudice, albeit unspecified, is neither extenuated as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." *Id*. at 658. Here, because the delay is less than six years, clearly established Supreme Court law does not require application of the *Doggett*

rule.[4]

## 2. Particularized Showing of Prejudice

We assess whether Mr. Jackson has made a particularized showing of prejudice by considering the three interests that "the speedy trial right was designed to protect": (1) prevention of oppressive pretrial incarceration, (2) minimization of the accused's anxiety and concern, and (3) minimization of the possibility that a delay will hinder the defense. *Barker*, 407 U.S. at 532. Impairment of the defense is the most important interest. *Id.* Because the seriousness of a post-accusation delay worsens when the wait is accompanied by pretrial incarceration, oppressive pretrial incarceration is the second most

---

[4] *Doggett* does not definitively determine whether a delay of less than six years will ever relieve a defendant of the need to make a particularized showing of prejudice. Other circuits, when applying *Doggett* in cases involving delays of less than six years, have more clearly defined the minimum amount of delay necessary to relieve a defendant of the need to make a particularized showing of prejudice. *See, e.g., United States v. Bergfeld*, 280 F.3d 486, 489-91 (5th Cir. 2002) (holding that a delay of five years and three months was presumptively prejudicial); *United States v. Serna-Villarreal*, 352 F.3d 225, 231-33 (5th Cir. 2003) (concluding that a three-year delay caused by governmental negligence did not require dismissal of the indictment). We, however, have yet to apply *Doggett*'s particularized-showing rule on direct appeal. Consequently, we have not decided whether a delay shorter than six years can relieve a defendant of the need to make a particularized showing of prejudice. Because we are currently considering this question in the context of habeas review, our inquiry is limited to determining whether this delay is contrary to clearly established Supreme Court precedent. We, therefore, leave open the question whether a delay of less than six years can relieve a defendant of the need to make a particularized showing of prejudice until we have an opportunity to consider it on direct appeal.

important factor. *See id.* at 533 (noting serious disadvantages caused by pretrial incarceration). The burden of showing all types of prejudice lies with the individual claiming the violation and the mere "possibility of prejudice is not sufficient to support [the] position that . . . speedy trial rights [are] violated." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986).

Here, even though we construe Mr. Jackson's pro se briefing liberally, *Cummings v. Evans*, 161 F.3d 610, 613 (10th Cir. 1998), Mr. Jackson did not raise the issues of oppressive pretrial detention and increased anxiety below. As the Magistrate Judge stated, "Petitioner notes, under Barker, the third interest — a defense unhampered by delay — is the most important interest . . . . Petitioner's argument addresses only this element of prejudice." Our inquiry, then, is limited to the third interest under *Barker*, prejudice to the defense. *See United States v. Cervini*, 379 F.3d 987, 994 n.5 (10th Cir. 2004).

Mr. Jackson argues that the OCCA's decision finding his defense not impaired was objectively unreasonable, because his key witness, Mr. Brown, died before he knew about the pending information against him. Mr. Jackson argues that Mr. Brown's death constitutes obvious prejudice. *See Barker*, 407 U.S. at 532 ("If witnesses die or disappear during a delay, the prejudice is obvious."); *see also Moore v. Arizona*, 414 U.S. 25, 27 n.2 (1973) (quoting *Barker*). To the extent that Mr. Jackson advocates a per se rule that the death of a witness during

delay impairs the defense, we agree with the District Court and reject this argument as inconsistent with *Barker* itself, *see* 407 U.S. at 532-33, and unsupported by any lower court rulings applying *Barker*.

On the other hand, the question is much closer as to whether the unique circumstances of this case caused Mr. Brown's death to impair Mr. Jackson's defense. In arguing that the unavailability of a witness impaired the defense, a defendant must "state[] with particularity what exculpatory testimony would have been offered." *United States v. Tranakos*, 911 F.2d 1422, 1429 (10th Cir. 1990) (internal quotations, citations, and alterations omitted). The defendant must also present evidence that the delay caused the witness's unavailability. *Gutierrez v. Moriarty*, 922 F.2d 1464, 1472 (10th Cir. 1991). Mr. Jackson satisfies both of these criteria.

Despite the State's contention that Mr. Jackson's recounting of Mr. Brown's testimony is speculative, *see Perez v. Sullivan*, 793 F.2d 249, 257 (10th Cir. 1986) ("Speculative allegations of injury are unpersuasive."), we find that Mr. Jackson set forth Mr. Brown's probable testimony with sufficient clarity and particularity to support his prejudice claim, *see Tranakos*, 911 F.2d at 1429. The State relies on three cases to support its position: *Tranakos*, 911 F.2d at 1429, *United States v. Schlei*, 122 F.3d 944, 988 (11th Cir. 1997), and *United States v. Neal*, 27 F.3d 1035, 1043 (5th Cir. 1994). Although the unavailable witness died

-18-

during the delay in all three cases, in every instance the accused knew of the pending indictment before the witness died but took no steps to preserve testimony. *Id.* The courts in those cases based their holdings in large part on the fact that a defendant must take steps, when possible, to preserve testimony. *See, e.g.*, *Neal*, 27 F.3d at 1043 ("Moreover, [the defendant] has not explained why neither he nor his attorney took steps to preserve the witnesses' testimony for trial."). Here, however, Mr. Brown died before Mr. Jackson even learned of the pending LSD information. Mr. Jackson was not, therefore, on notice of the need to preserve testimony, nor did he have a realistic opportunity to do so.

Given this key distinction, we find the State's "speculative argument" misplaced. Initially, we note that the State does not contest that Mr. Brown was in fact a police informant who associated with Mr. Jackson. Thus, there is no allegation that Mr. Jackson is merely conjuring up potential witnesses. Also, in the context of an entrapment defense, which generally involves only the alleged entrapper and the accused, if the defendant learns of the indictment after the death of the "entrapping" witness, the proffered testimony will necessarily be speculative in the sense the State urges. If we adopted the State's rule, we would essentially foreclose speedy trial relief to every defendant who learns of the indictment after a witness—who is the sole source of the relevant testimony—dies, even if this situation arises through no fault of the defendant.

Thus, while we continue to adhere to our general rule against speculative allegations of prejudice, *see Perez*, 793 F.2d at 257, we find *Perez* inapplicable to the unique factual scenario presented here. *See also Jackson,* F-2000-387, at 4 (Chapel, J., dissenting) ("Despite the State's suggestion that Jackson's claim is equally speculative, the record amply shows what Jackson believed Brown would have testified about.").

Second, we find that the unavailability of Mr. Brown resulted directly from the delay. *See Gutierrez*, 922 F.2d at 1472. When a key witness dies within a year of the indictment (the time after which a speedy trial inquiry is triggered), the delay does not impair the defense because the witness would not have been available for trial even if the proceedings had occurred in a timely manner. *See, e.g., Hakeem v. Beyer*, 990 F.2d 750, 763 (3d Cir. 1993) (finding no defense impairment when a witness "died four months after [the defendant's] arrest, [because] the delay had [not] progressed to the point at which any speedy trial inquiry would have been triggered"). Here, however, Mr. Brown died at least one and one-half years after the State entered the information against Mr. Jackson.[5] Thus, Mr. Jackson could have used Mr. Brown's testimony if his trial had proceeded in a timely manner.

---

[5] The record merely states that Mr. Brown passed in 1997. Thus, he died from one and one-half to two and one-half years after the information was filed against Mr. Jackson.

We must also consider factors that weigh against a finding that the delay impaired Mr. Jackson's defense. First, the jury heard the substance of Mr. Brown's probable testimony at trial as recounted by Mr. Jackson. *Cf. United States v. Gomez*, 67 F.3d 1515, 1522-23 (10th Cir. 1995) (finding no prejudice because the substance of the unavailable witness's testimony was available in a transcript from a previous trial). Second, had Mr. Brown testified in the manner suggested by Mr. Jackson and had the jury heard testimony that Mr. Jackson was a drug addict at the time, a reasonable jury could still have rejected the entrapment defense. Under Oklahoma law, "[e]ven if induced to commit the crime, [Mr. Jackson] may not avail himself of the [entrapment] defense if he otherwise [was] predisposed to commit it." *Carney v. State*, 679 P.2d 1303, 1304 (Okla. Ct. Crim. App. 1984). While Mr. Brown's testimony, as hypothesized by Mr. Jackson, would have shown inducement, it would have left open the question of whether Mr. Jackson was predisposed to traffic in LSD. Mr. Jackson, however, testified that, at the time of the incident: (1) he was a drug addict; (2) he wanted to secure drugs for his personal use; and (3) he was motivated to sell LSD by the prospect of getting free LSD in return. Given this testimony, a reasonable jury could have found Mr. Jackson predisposed to traffic in LSD and rejected his entrapment

defense.[6]

These competing factors leave us in doubt as to whether the delay, in fact, impaired Mr. Jackson's defense. Our doubt, however, is not determinative here. Under AEDPA, we may only make a finding that differs from the OCCA's if the OCCA's finding was contrary to clearly established Supreme Court precedent. Here, clearly established Supreme Court precedent does not preclude a finding by the OCCA that Mr. Jackson failed to establish an impairment to his defense.

E.    Balancing

Speedy trial claims require applying a balancing test. Because we focus on the OCCA's decision and not its reasoning, *see Aycox*, 196 F.3d at 1177, the fact that the OCCA has made findings regarding the *Barker* factors that are contrary to clearly established Supreme Court precedent is insufficient to grant habeas relief. Habeas relief is only available if there is no possible balancing of the factors that both supports the OCCA's ultimate decision and is not contrary to clearly

---

[6]The record, however, does not reveal whether Mr. Brown would have testified that Mr. Jackson was a drug addict or if Mr. Jackson would have made this admission on the stand if Mr. Brown had testified. This ambiguity is especially vexing given that under Oklahoma law the State has the burden to prove beyond a reasonable doubt that no entrapment occurred. *See* Okla. Unif. Jury Instr. - Crim. § 8-26; *McInturff v. State*, 554 P.2d 837, 839-40 (Okla. Ct. Crim. App. 1976). We assume, however, that Mr. Jackson's status as a drug addict would have been presented to the jury even if Mr. Brown had testified because Mr. Jackson does not argue that the drug-addiction testimony would not have been given if Mr. Brown had testified.

established Supreme Court precedent. Hence, we turn to the balancing of the *Barker* factors to determine whether the OCCA's overall decision was objectively unreasonable.

First, clearly established Supreme Court law requires that a delay of four and one-third years both triggers the remaining *Barker* analysis and weighs against the State. *See Doggett*, 505 U.S. at 652. Next, clearly established Supreme Court law requires that an unexplained, four and one-third-year delay weighs against the State even more heavily than a shorter negligent delay. *See id.* at 656-57; *Barker*, 407 U.S. at 531, 533-34 . Third, the state court record clearly and convincingly establishes that Mr. Jackson raised the speedy trial claim before the state trial court. *See* 28 U.S.C. § 2254(d)(2) . Hence, clearly established Supreme Court law requires this factor to weigh against the State. *See Doggett*, 505 U.S. at 654. On the other side of the scales, we cannot say, pursuant to clearly established Supreme Court law, that Mr. Jackson's defense was hindered as a result of the delay. In order to grant habeas relief, then, we must find pursuant to clearly established Supreme Court law that there is no possible balancing of these factors that is consistent with the OCCA's decision.

There is no such clearly established Supreme Court law supporting Mr. Jackson's claim for relief. While the Court has held that "a showing of prejudice to the defense at trial [is not] essential to establish a federal speedy trial claim[ in

-23-

every case,]" *Moore*, 414 U.S. at 25, Mr. Jackson fails to establish any grounds for us to find prejudice as to any other protected interest. This is not to say, however, that every case necessarily requires a finding of prejudice. *See id.* at 27. But we have held that "[w]hile prejudice is not essential to a violation, there is . . . reluctance to find a speedy trial deprivation where there is no prejudice." *United States v. Brown*, 600 F.2d 248, 254 (10th Cir. 1979). Most importantly, there is no clearly established Supreme Court law mandating a balancing that reaches a result contrary to the OCCA's decision. Therefore, we cannot conclude that the OCCA's decision to deny Mr. Jackson's Sixth Amendment claim is objectively unreasonable in light of clearly established Supreme Court precedent.

## V. CONCLUSION

Because we cannot conclude that the OCCA's ultimate balancing of the four *Barker* factors was objectively unreasonable in light of clearly established Supreme Court precedent, we AFFIRM. Appellant's pro se motion "to re-brief the appeal if necessary" is denied.