**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 30, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

PETE GARY MOOMEY,

          Petitioner-Appellant,

v.

MARTY SIRMONS, Warden; THE
ATTORNEY GENERAL OF THE
STATE OF OKLAHOMA,

          Respondents-Appellees.

No. 05-6299
(D.C. No. 04-CV-880-HE)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **LUCERO**, and **HARTZ,** Circuit Judges.

---

Pete Gary Moomey, convicted in state court of first-degree murder, appeals

the federal district court's order denying his petition for habeas relief.[1]  We

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1]    We deny Respondents-Appellees' motion to dismiss this appeal on the ground that Moomey failed to lodge specific objections to the federal magistrate judge's report and recommendation that habeas relief be denied.  While

(continued...)

granted a certificate of appealability to determine whether Moomey's trial counsel was ineffective for not pursuing certain evidence that another person had committed the crime. We conclude that (1) counsel acted within the realm of acceptable trial strategy in deciding what witnesses to call; and (2) that procedural bar precludes substantive review of counsel's failure to obtain DNA evidence. Therefore, we affirm.

## BACKGROUND

Moomey and Bill Walker were friends and business partners. During their relationship, "[t]here had become an imbalance on the order of $160,000." Aplt. App., Vol. 3, at 985. Specifically, Moomey "had overdrawn [his] share of [the] net profits." *Id.* at 992.

On Thursday, May 21, 1998, Walker arrived at the Cove Club, an Oklahoma City bar, expecting to meet Moomey "with some money." *Id.*, Vol. 1, at 250. When Moomey arrived, he told Walker that "he had made a deposit at the bank . . . [and] that it was late in the day and would not show up on the records until tomorrow." *Id.* at 251. The two had a drink, played pool, and then left separately for the Enzone, another bar.

---

[1](...continued)
Moomey's objections were limited in specificity, they were specific enough to focus the district court's attention on the factual and legal issues in dispute. *See United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060-61 (10th Cir. 1996).

Before reaching the Enzone, Moomey stopped at his flower shop, where his friend, Steve Tabor, was waiting. Ordinarily, Tabor would drive Moomey around town because Moomey had lost his driver's license. But because Moomey "need[ed] to take care of some business," Moomey had Tabor follow him to the Enzone. *Id.* at 170-71.

Moomey and Tabor arrived at the Enzone sometime around 5:00 or 7:00 p.m., and began playing pool. Walker was there, along with another of the group's friends, Tommy Yost. At 10:00 p.m., Moomey told Tabor to wait at the Enzone for about an hour, because he might call for a ride. Moomey then left in Walker's car.

Around 10:38 p.m., Moomey called Tabor, stating that he was "at Kerr Village," an apartment complex, and needed a ride. *Id.* at 173. Tabor traveled to Kerr Village and found Moomey, who was carrying a "shoe box with a cloth" on it. *Id.* at 175. According to Tabor, Moomey put the box in the back of Tabor's truck, got in, and wiped his hands and forearms with a piece of paper, which he then threw out the window. Moomey also suggested that Tabor "may need to vacuum out [the] truck, . . . [as] there may be blood and glass in it." *Id.* at 177. Tabor thought that Moomey appeared "stressed out." *Id.* at 176. Tabor drove Moomey to a parking lot adjacent to Moomey's home, where Moomey said, "The less you know, the better off you are. . . . [I'm] not a bad person, it's just business, and watch the TV. . . . [I]t has to do with $160,000." *Id.* at 177.

Moomey then exited the truck, retrieved the box and cloth, and walked off toward his home. There, Moomey's wife, Regina, saw her .38-caliber revolver in the box.

Around 11:00 or 11:30 p.m., Yost, who was still at the Enzone, received a telephone call from Moomey, asking if Yost would come to Moomey's home and drive Regina to the Enzone so she could retrieve Moomey's truck. Yost complied.

Several hours later, Moomey left home in his truck, with the box and some clothes. Moomey picked-up his girlfriend and left town, intending to order plants in Kingston, Oklahoma, and then take a trip "somewhere." *Id.*, Vol. 2, at 403.

On Saturday, May 23, police found Walker's car in Kerr Village parked next to a dumpster. According to residents, it had been parked there since Thursday night. Walker's body was found lying in the front seat and there were two gunshot wounds to his head. The window on the driver's side door was shattered. The evidence indicated that Walker had been shot at close range, "six or so inches away," *id.* at 523, with .38-caliber metal-point bullets fired from either a .38-caliber or a .357-magnum revolver, *id.* at 558. Among other items found in the car was a cigarette butt, the DNA profile for which matched neither Moomey nor Walker.

When Tabor learned of Walker's murder, he contacted police. Moomey was arrested in Galveston, Texas on Sunday, May 24. A search of Moomey's

home uncovered a box of .38-caliber ammunition that was consistent with a bullet removed from Walker's skull. Moomey was charged with first-degree murder and robbery with a firearm.

During trial, a dispute arose between Moomey and his defense counsel. Moomey wanted his counsel "to call another witness . . . before I testify, another person that's been implicated in this crime." *Id.*, Vol. 5, at 1660. Defense counsel explained to the court that there were three designated witnesses in this area: Tommy Merritt, Patsy Thompson, and Donna Schatz. Thompson and Schatz purportedly overheard Merritt tell an unidentified party on the telephone that he (Merritt) had killed Walker. Defense counsel stated that he had interviewed Thompson and concluded that she would not make "a credible witness." *Id.*, Vol. 5, at 1662. He continued: "I have made the decision that strategically in this trial to not muddy the water and put this on. I feel it will backfire. And so, I do not intend to call Tommy Merritt, Patsy Thompson or Donna . . . Schatz." *Id.* Defense counsel indicated, however, that he had not spoken to Schatz. The prosecutor revealed that Merritt was interviewed by police and denied admitting to Walker's murder. Thompson was also interviewed, and she told police "that she was [Moomey's] first love and that she would do anything to get [Moomey] out of jail." *Id.*, Vol. 6, at 1666. Additionally, Thompson was Moomey's sister-in-law and Merritt's ex-girlfriend, had once smashed Merritt's windshield, and failed to reveal Merritt's alleged admission for

-5-

four-and-a-half months. Moomey ultimately decided to follow defense counsel's advice and to proceed without calling any of the three witnesses.

Moomey took the stand and testified that around 10:00 p.m., Walker offered to drive him home from the Enzone. And that while driving him home, Walker took a diversion to Kerr Village to "pick up" a female prostitute. *Id.*, Vol. 6, at 1742. Because Walker later decided to "hang around [Kerr Village]" and "party," Moomey called Tabor for a ride home. *Id.* at 1747-48. Moomey denied warning Tabor about blood and glass possibly getting in his truck, denied mentioning "$160,000," and claimed that the box he was carrying contained a bottle of alcohol and that much of his conversation with Tabor concerned Tabor's affair with Regina. *Id.* at 1759. Moomey also testified that he did not kill Walker, did not owe him $160,000, and that someone must have planted the ammunition in his home. During closing arguments, Moomey's counsel suggested that Walker may have been killed by the prostitute or her pimp, and that Tabor and Regina implicated Moomey so they could be together.

The jury found Moomey guilty of first-degree murder, but not guilty of robbery. Moomey appealed to the Oklahoma Court of Criminal Appeals (OCCA), arguing, among other things, that his trial counsel was ineffective for "fail[ing] to present to the jury that another man had admitted that he had killed Walker." *Id.*, Vol. 7, at 2049. The OCCA affirmed, stating that counsel's conduct "was within the wide range of reasonable professional conduct based on sound trial strategy."

*Id.* at 2224. Moomey then sought state post-conviction relief. He was unsuccessful initially and on appeal.

In his habeas petition to the federal district court, Moomey argued, among other things, that trial counsel was ineffective for (1) "fail[ing] to investigate material exculpatory information from" Schatz and Thompson indicating that Merritt was the killer, *id.* at 2071; and (2) not having the "DNA collected at the [crime] scene" compared to Merritt's DNA, *id.* at 2072. The court denied the petition and Moomey appealed.

## DISCUSSION

We review the denial of federal habeas relief de novo, applying the same standards used by the district court. *Jackson v. Ray*, 390 F.3d 1254, 1259 (10th Cir. 2004), *cert. denied*, 126 S. Ct. 61 (2005). Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), a federal court may not grant habeas relief on a claim adjudicated on the merits in state court, unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). Moomey does not complain that the OCCA unreasonably determined the facts of his ineffective-assistance claim; thus, our analysis proceeds under § 2254(d)(1).

The Sixth Amendment's counsel clause is violated when counsel performs deficiently and prejudices the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. In particular, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

*I. Witness Testimony*

Moomey argues that his counsel's decision to not call Merritt, Thompson, and Schatz was deficient because he never interviewed Schatz. Moomey explains that "Schatz was a potential credible witness [who] would have identified the real killer and/or who would have been used to impeach Mr. Merritt's testimony or assertion of the 5th Amendment." Aplt. Br. at 42. Nevertheless, we cannot say that the OCCA improperly applied *Strickland* in deeming counsel's decision acceptable trial strategy. Merritt had denied responsibility for the killing and there was no independent evidence implicating him. Thompson had motive to lie about Merritt's involvement and had failed to promptly contact authorities. And while testimony from Schatz might have drawn the jury's attention away from Moomey, it might also have alienated the jury, given the suspect nature of the

accusation. Further, accusing Merritt would have conflicted, at least partially, with Moomey's theory that Walker had been killed by a prostitute or her pimp.[2] Consequently, counsel's decision to avoid "muddy[ing] the water" by accusing Merritt of Walker's murder was strategically sound, notwithstanding the failure to interview Schatz. Aplt. App., Vol. 5, at 1662.

## II. DNA Evidence

Moomey also argues that his counsel was ineffective for not obtaining DNA from Merritt and comparing it to the DNA on the cigarette butt found in Walker's car. This argument was not made to the OCCA on direct appeal. Moomey apparently advanced this argument during the state post-conviction proceedings, *id.*, Vol. 7, at 2138, and the OCCA found that it was barred, as it could have been brought on direct appeal, *id.* at 2065.

We do not consider issues on habeas review that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice. *Smith v. Mullin*, 379 F.3d 919, 926 (10th Cir. 2004). We have construed Oklahoma's procedural bar as effective "to preclude habeas review of ineffective assistance claims only when 'trial and appellate counsel differ' and the 'claim can be resolved upon the trial record alone.'" *Id.* at 927 (quoting *English v. Cody*, 146 F.3d 1257, 1264 (10th Cir. 1998)). Moomey had different counsel at trial and

---

[2]      Nothing in the record indicates whether Merritt was or was not a pimp.

on appeal. Further, after the state raised the procedural-bar defense in regard to the DNA-evidence/ineffective-assistance issue, Aplt. App., Vol. 7, at 2138, Moomey's habeas counsel filed a reply completely omitting any mention of the issue or the state's defense, *id.* at 2183-92. *See Hooks v. Ward*, 184 F.3d 1206, 1217 (10th Cir. 1999) ("Once the state pleads the affirmative defense of an independent and adequate state procedural bar, the burden to place that defense in issue shifts to the petitioner."). We conclude that the state sufficiently raised the procedural-bar defense and that Moomey conceded its applicability before the federal district court.[3]

The judgment of the district court is AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

---

[3] In resolving Moomey's habeas petition, the federal district court found "analysis of the [habeas] procedural issues more problematic than a review of the merits of [Moomey's] ineffective assistance of counsel claims." Aplt. App., Vol. 7, at 2169. Consequently, the court did not apply procedural bar or AEDPA-deference, and instead, reviewed on the merits Moomey's claim that trial counsel was ineffective for not obtaining a DNA comparison. While we do not share the district court's view that the record is so vague as to warrant a merits review, we would agree with the district court that, on the merits, Moomey's trial counsel was not deficient for failing to obtain a DNA comparison.