**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

GLEN FOLSOM,

      Petitioner-Appellant,

v.

ERIC FRANKLIN,

      Respondent-Appellee,

   and

STATE OF OKLAHOMA,

      Respondent.

No. 06-6172
(D.C. No. CIV-05-1240-W)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **McKAY**, and **GORSUCH**, Circuit Judges.

An Oklahoma trial court convicted Glen Folsom of committing nine

felonies, including armed robbery, kidnaping, and rape, sentencing him to 424

years of incarceration. Mr. Folsom's direct appeal and state petition for

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

post-conviction relief proved of no avail. Eventually, Mr. Folsom filed a petition for a writ of habeas corpus, under 28 U.S.C. § 2254, in the United States District Court for the Western District of Oklahoma. The district court denied relief, and Mr. Folsom filed with us a request for a certificate of appealability ("COA"). We granted review to hear Mr. Folsom's contention that the trial court infringed his Sixth Amendment rights by allowing him to shed his appointed counsel and proceed *pro se* at trial, as well as his argument that the court failed to afford due process when assessing his competency at sentencing. After a full vetting of Mr. Folsom's arguments and for reasons explored below, we affirm the district court's judgment.

* * *

On August 17, 2002, Glen Folsom, armed with a handgun, entered a video rental store in Tecumseh, Oklahoma, robbed two female clerks, fired his weapon, forced the clerks into his car, drove them into the country, and sexually assaulted them. In response, the State of Oklahoma charged Mr. Folsom with two counts of robbery with a firearm; two counts of kidnaping; one count of rape by instrumentation; two counts of attempted first-degree rape by force and fear; one count of possession of a firearm during the commission of a felony; and one count of possession of a firearm after former conviction of a felony.

Just before his scheduled trial, Mr. Folsom told his attorney Cregg D. Webb that he wished to proceed *pro se*. After the state trial court afforded Mr. Folsom

-2-

the chance to mull his request over the weekend, Mr. Folsom reaffirmed his desire to proceed *pro se*, though with Mr. Webb's continued assistance and advice. I Trial Tr. at 6. The trial court explained to Mr. Folsom that he had a Sixth Amendment right to represent himself, but that the court first needed to ensure Mr. Folsom made this "very serious" decision "freely," "voluntarily," and "knowingly." *Id*. at 6-7. Toward that end, the court supplied Mr. Folsom a written questionnaire, instructed him to complete it, and adjourned the proceedings to give Mr. Folsom time to contemplate his answers. *See id*. at 7.

Upon returning from recess, the trial court asked Mr. Folsom to take the stand and proceeded to examine him under oath. *See id*. at 8-17. The court first ensured that Mr. Folsom had read, understood, and answered truthfully "each and every question" on the written questionnaire, *id*. at 8, learning in the process, among other things, that Mr. Folsom previously represented himself in a civil case and had earned a General Equivalency Diploma. *See* I Trial Tr. at 8, 13-14. The court thoroughly discussed with Mr. Folsom the disadvantages of proceeding *pro se* and the advantages of representation by counsel. *See id*. at 9-13. The court then ensured that Mr. Folsom had received, read, and understood the charges against him, along with the possible penalties associated with a guilty verdict. *See id*. at 13.

At no time did Mr. Folsom or his counsel inform the court of any medical history that might preclude Mr. Folsom from proceeding *pro se*. To the contrary,

the court directly asked Mr. Folsom, "[h]ave you ever been under the care of a psychiatrist, psychologist, or other mental health professional?" *id.* at 14, to which Mr. Folsom responded, "[y]es, sir." *Id.* The court followed up, inquiring, "[w]ould that in any way interfere with your ability to proceed here today?" *Id.* Mr. Folsom answered flatly, "[n]o, sir." I Trial Tr. at 14. Pursuing the subject further, the court then asked a series of questions to ensure that Mr. Folsom knew his location, had not taken mind-altering drugs or medications during the course of the proceedings, and then again asked in four different ways – both in the affirmative and negative – whether Mr. Folsom was certain he wanted to proceed *pro se*. *See id.* at 14-15. Only after all this did the court rule Mr. Folsom "knowingly, intelligently, and voluntarily" waived his right to counsel and granted Mr. Folsom's request to proceed *pro se*. *Id.* at 15-16. The court also directed that Mr. Webb would continue to serve as Mr. Folsom's legal advisor, and that Mr. Folsom could turn over the representation of his case to Mr. Webb at any time. *See id.* at 16-17.

During trial, Mr. Folsom made opening and closing statements to the jury, examined the prosecution's witnesses, responded to the evidence at the close of the prosecution's case, took the stand on his own behalf, and called an additional witness. Despite his efforts, the jury found Mr. Folsom guilty on nine counts.[1]

---

[1]      Counts 6 and 7 of the indictment charged Mr. Folsom with two counts of
(continued...)

Prior to his sentencing, Mr. Folsom sent a letter to the Oklahoma trial court requesting appointed counsel on the basis that he suffered from a medical condition that he believed might interfere with his continued ability to proceed *pro se*. At the sentencing hearing, the court promptly re-appointed counsel for Mr. Folsom and then asked for details about the medical condition. Mr. Folsom disclosed to the court for the first time that he had been diagnosed with paranoid schizophrenia in 1987 and bipolar disorder in 2002, and he indicated that he doubted his mental competency to proceed with sentencing. The trial court scheduled a threshold competency hearing at which Mr. Folsom testified that, since his trial, he had twice attempted suicide, been unable to recall previous court proceedings, and was no longer able to understand the legal process or assist his counsel on sentencing issues.[2] By contrast, three jail guards testified that, despite some of Mr. Folsom's erratic behavior,[3] they believed that

---

[1](...continued)
attempted first-degree rape. The jury found Mr. Folsom guilty of the attempted first-degree rape charged in Count 6, but not guilty of the attempted first-degree rape charged in Count 7. The jury instead found Mr. Folsom guilty of the lesser-included crime of sexual battery.

[2] On cross-examination, Mr. Folsom admitted his understanding that the jury had recommended his long period of incarceration, and he understood at least some of the charges against him. He also corrected an Oklahoma prosecutor on the mistaken assertion that Oklahoma charged Mr. Folsom for his firing a weapon during the course of the alleged assault.

[3] The guards testified that Mr. Folsom had been angry, frustrated, confused, and depressed; fought with other inmates; punched out a window at the city jail;

(continued...)

-5-

Mr. Folsom's mental health and understanding of the legal process had not deteriorated since the jury found him guilty.

At the close of the competency hearing, the Oklahoma trial court found – especially after observing firsthand Mr. Folsom's *pro se* performance and acknowledging that he had previously represented himself in court – that "[t]here is absolutely no doubt in my mind [Mr. Folsom] is competent within the meaning of the law," and that Mr. Folsom's competency claim was "an effort to delay the efforts of justice." VI Trial Tr. at 775. The Oklahoma trial court sentenced Mr. Folsom to, *inter alia*, 424 years of incarceration.

Mr. Folsom appealed to the Oklahoma Court of Criminal Appeals ("OCCA"), alleging the Oklahoma trial court erred by, among other things, allowing him to proceed at trial *pro se* without adequately inquiring into his legal ability to do so ("waiver-of-counsel claim"), and failing to hold a full-blown competency examination before sentencing ("competency hearing claim"). The OCCA affirmed, holding as to Mr. Folsom's waiver-of-counsel claim that "the record as a whole demonstrates [that Mr. Folsom] was competent to proceed *pro se* at trial"; that the "trial court made appropriate inquiries to make that determination"; and that "[t]he record as a whole suggests and supports a valid waiver of the right to counsel, by a competent defendant." OCCA Summary Op.,

_____

[3](...continued)
and threatened suicide.

R. doc. 17, ex. 3, at 3. As to Mr. Folsom's competency hearing claim, the OCCA held that the Oklahoma trial court did not abuse its discretion in ruling that Mr. Folsom failed to "raise sufficient doubt as to his competency to warrant an examination" before sentencing. *Id.* at 2-3. Mr. Folsom's subsequent efforts to obtain post-conviction relief in Oklahoma state courts proved unfruitful.

After exhausting his state court remedies, Mr. Folsom filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Oklahoma. In this petition, Mr. Folsom again pursued his waiver-of-counsel claim and competency hearing claims. As to the former, the district court held as "a reasonable application of federal law" the OCCA's determination that the entire record, including the Oklahoma trial court's examination of and warning to Mr. Folsom, sufficed to establish a knowing, intelligent, and voluntary waiver of counsel. As to the latter, the district court, citing 28 U.S.C. § 2254(e)(1), ruled that competency is a factual issue for the state courts and federal courts must treat as presumptively correct the Oklahoma court's findings. Because the Oklahoma trial court held a threshold competency hearing and found Mr. Folsom competent, and because Mr. Folsom failed to rebut the presumption of his competence with clear and convincing evidence, the district court found itself powerless to grant Mr. Folsom's requested habeas relief.

Mr. Folsom thereafter sought from us a COA, essentially lodging the same arguments, and we granted his request for review in part.[4]

\* \* \*

"In habeas cases, we review the federal district court's legal conclusions de novo, applying the same review of the state court decision as the district court." *Jackson v. Ray*, 390 F.3d 1254, 1259 (10th Cir. 2004) (citations omitted). Under the relevant AEDPA standard, where factual and legal issues have already been adjudicated in state court, a federal court may only grant a writ of habeas corpus if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on

---

[4]     A panel of this court previously granted Mr. Folsom's COA on the following issues:

> 1) Whether the state trial court violated his procedural due process rights by failing to conduct an adequate hearing on the issue of his competency to stand trial;
>
> 2) Whether the state trial court violated his substantive due process rights by finding him competent to stand trial; and
>
> 3) Whether Folsom was denied his Sixth Amendment right to be represented by counsel at trial because he did not knowingly and intelligently waive his right to counsel.

Order Granting in Part and Denying in Part an Application for a Certificate of Appealability, at 3.

an unreasonable determination of the facts in light of evidence presented in the state court proceeding. 28 U.S.C. §§ 2254(d)(1) and (2). For substantially the same reasons as the district court, we agree that the Oklahoma courts' resolution of Mr. Folsom's claims did not represent an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence.

We start by acknowledging the bedrock constitutional principle that Mr. Folsom enjoys a right to waive his right to counsel "knowing[ly], intelligent[ly], and voluntar[ily]." *See Maynard v. Boone*, 468 F.3d 665, 676 (10th Cir. 2006). Trial courts have "the serious and weighty responsibility . . . of determining whether there is an intelligent and competent waiver by the accused." *See id.* (citing *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938)). To fulfill that responsibility, "a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. . . . The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility." *Id.* at 677 (citing *Von Moltke v. Gillies*, 332 U.S. 708, 723-24 (1948)).

In this case, Mr. Folsom informed the trial court that he had previously been under the care of mental health professionals. In response, the court asked, "[w]ould that in any way interfere with your ability to proceed here today?"; to which Mr. Folsom answered, "[n]o, sir." Though the court proceeded to ask Mr. Folsom follow up questions, had the court delved more deeply (or had

Mr. Folsom and his counsel been more forthcoming) it might have learned that Mr. Folsom had been previously diagnosed with serious mental health conditions. Like *Von Moltke*, this case thus serves to illustrate how a court may be left "entirely unaware of the facts essential to an informed decision that an accused has executed a valid waiver of his right to counsel." *Von Moltke*, 332 U.S. at 724. For this reason, we encourage trial courts to do more than recite a set of questions by rote; we emphasize *Von Moltke*'s teaching that they must engage the accused in a real effort to uncover the relevant facts, just as we emphasize that existing counsel and the witness have an obligation to be fully forthcoming with relevant facts uniquely in their hold.

Nevertheless, as acknowledged by the district court, the OCCA's determination that he was afforded that right is difficult to assail under AEDPA's strict standards. Mr. Folsom indicated that he had represented himself in a civil case and had obtained a General Equivalency Diploma. In none of their written or oral answers did Mr. Folsom or his counsel give the court any reason to doubt Mr. Folsom's competency at trial. And Mr. Folsom's conduct during trial, where he presented his case fairly well, plainly bolstered the trial court's conviction that he was competent to waive his right to counsel. We are pointed to no precedent or fact, and have discerned none ourselves, suggesting the Oklahoma courts' disposition of Mr. Folsom's waiver of counsel claim under these circumstances fell afoul of AEDPA's twin "unreasonableness" standards. *See generally*

*Maynard*, 468 F.3d at 671 (10th Cir. 2006) (internal quotations and citation omitted) ("[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254. . . . It is not enough that the decision is clearly wrong or that the reviewing court would have reached a contrary decision. . . . [T]he state court decision must be at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable.").

As to Mr. Folsom's competency hearing claim, and as the district court correctly observed, Congress has instructed us that competency is a factual issue for the state courts and that the Oklahoma courts' findings are presumptively correct. *See id.* at 673-74. Mr. Folsom fails to supply us, as he must, with clear and convincing evidence that the Oklahoma courts' factual findings were erroneous. *See id.* While we do not doubt the presence of evidence that could have led a reasonable fact finder to question Mr. Folsom's mental faculties (*e.g.*, Mr. Folsom's testified that he twice attempted suicide; guards testified of their perception of Mr. Folsom's volatile emotions and violent behavior, such as fighting with other inmates, punching out a window at the city jail, and threatening suicide), neither can we shy at the presence of evidence tending in the opposite direction (*e.g.*, Mr. Folsom's admission of his understanding of some charges and jury's sentencing recommendation; Mr. Folsom's on-the-stand correction of the state prosecutor about the charges against him; the guards'

testimony of their observations of Mr. Folsom). All of this is to say that, by virtue of the conflicting and credible evidence on both sides of the ledger, Mr. Folsom has failed to carry his heavy burden of demonstrating by clear and convincing evidence that the trial court erred in its factual findings about his competency. *See id.* ("[W]e conclude a rational [factfinder] could have concluded that [the evidence] weighed in favor of finding competence. The determination in the first instance is for [factfinders,] and we are not free to substitute our view of the evidence.")

The judgment of the district court is affirmed. Mr. Folsom's motion to proceed in forma pauperis is granted.

Entered for the Court


Neil M. Gorsuch
Circuit Judge