The UNITED STATES, Appellee,

v.

Leroy McCASKILL, Appellant.

No. 73-1148.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1973.

Decided July 31, 1973.

C. Marshall Friedman, St. Louis, Mo., for appellant.

Frederick J. Dana, Special Atty., U. S. Dept. of Justice, St. Louis, Mo., for appellee.

Before GIBSON, LAY and ROSS, Circuit Judges.

LAY, Circuit Judge.

Leroy McCaskill appeals from a judgment of conviction on two counts of distributing a controlled substance (heroin) in violation of 21 U.S.C. § 841(a)(1). The sales allegedly occurred on the parking lot of the White Castle Restaurant in the City of St. Louis on July 19 and 21, 1972.

There are two basic issues involved on appeal. The first concerns the court's instructions and the prosecutor's comment in regard to the failure of the defendant to call his former employer, Henry Patterson. McCaskill had testified that at the time of the alleged transactions he was working as a barber at Pat's Barber Shop in East St. Louis, Illinois. The second ground for error is the alleged prejudicial argument of the prosecutor in final summation. For the reasons we now discuss we reverse and remand for new trial.

The government informant, Richard Armstrong, arranged the transaction and surveillance on the times in question. Armstrong did not testify at the trial. According to the government agents who testified at trial, Armstrong was observed arriving at the White Castle parking lot in a Volkswagen convertible driven and owned by the defendant. Armstrong got out of the car and met with the government agent who searched him and provided him with funds to make the purchase. Armstrong then proceeded to the driver's side of the Volkswagen and obtained the substance later identified as heroin. The agents described the driver of the car as wearing wire-rim glasses and a white mod hat with a wide brim and having a full beard and mustache. The weight of the driver was estimated to be 160 to 170 pounds. They identified the driver as the defendant McCaskill.

The defendant took the stand and denied participation in the alleged transactions. He testified that he never weighed more than 135 pounds, did not own a white hat with a wide brim, never wore wire-rim glasses nor did he ever wear a full beard or long sideburns. He stated that he was acquainted with the government informant, Richard Armstrong; however, he denied that he had

ever given Armstrong permission to use his car. He also denied he ever drove Armstrong to the White Castle on the two occasions. McCaskill has never before been convicted of or charged with a crime.

At the conclusion of the government's case the defense counsel advised the court in chambers that he was unable to locate Henry Patterson to testify at the trial. According to defense counsel, Patterson had previously advised him that he was available and willing to testify. In an attempt to contact Patterson at the time of trial, counsel was notified that Patterson's telephone had been disconnected and that his barber shop had been closed and vacated. His attempts to find Patterson at his home were likewise unavailing. Immediately after the conference in chambers the defendant took the stand and upon cross-examination the government for the first time brought out the fact that Mr. Patterson had not been presented by the defendant. Defense counsel objected, and the court at that time inquired of defense counsel if Patterson had been subpoenaed, which he had not, thus the court proceeded to instruct as follows:

"THE COURT: Well, just a minute. Ladies and gentlemen of the jury, the Court will tell you what the law is and I'll do that at this time. And I'm instructing you at this time, if a party fails to call a person who possesses knowledge about the facts in issue and who is reasonably available to him and who is not equally available to the other party, then you may infer that the testimony of that witness is unfavorable to the party who could have called him and did not.

"I'll read it again. If a party fails to call a person who possesses knowledge about the facts in issue and who is reasonably available to him and who is not equally available to the other party then you may infer that the testimony of that witness is unfavorable to the party who could have called him and did not.

"That's a double-edged sword, it cuts both ways."

Thereafter defense counsel requested leave of the court to issue a subpoena to Patterson, but this was refused. Counsel additionally asked the court to permit his secretary and the defendant's sister to testify with regard to their unsuccessful efforts to locate Patterson. The court refused to allow this explanatory testimony. Thereafter defense counsel requested an overnight recess—it was then 4:00 p.m.—in order to permit him an opportunity to attempt again to locate Mr. Patterson. The court also refused this continuance.

The apparent reasons that the court refused this testimony and the continuance were (1) the defendant had previously declared he was ready for trial and (2) the defense counsel had stated in the presence of the jury that he had attempted to contact Mr. Patterson and had been unsuccessful because the telephone had been disconnected. Thereafter the following colloquy between the court and counsel ensued:

"THE COURT: Well, you have already got that information in and I'm not going to grant the recess.

. . . .

"MR. FRIEDMAN: Could I ask just for a clarification of one thing that the judge said to me? When I referred to my secretary you said that matter is already before the jury with regard to any effort to contact Mr. Patterson. Would I be permitted to argue that matter?

"THE COURT: You have told the jury that you tried to contact him, you have admitted that you didn't subpoena him. The inference is obvious.

"MR. FRIEDMAN: Okay."

At the time of final argument when defense counsel attempted to state that Patterson was equally available to both sides and that he had been unable to contact him, the court sustained the government's objection that there was no

evidence of those facts. Thereafter the prosecutor in final argument stated:

"And he lives in East St. Louis, he worked for the man for two years. Now, you tell me whether or not practically he could find Patterson. He knew where he was, that was his employer."

Even if we can assume the propriety of the instruction and the government's comment it is obvious from the record that defendant was denied a fair opportunity to respond to the inference instructed upon. In Schumacher v. United States, 216 F.2d 780, 787–788 (8 Cir. 1954), cert. denied, 348 U.S. 951, 75 S. Ct. 439, 99 L.Ed. 743 (1955), this court through Judge Woodrough declared:

"It would present an anomaly in the law if, while one party may comment upon the absence of an opposing party's witness, .. . . the opposing party were not permitted to introduce evidence to excuse the absence of such witness."

Professor Wigmore has observed:

"[T]he party affected by the inference may of course *explain* it away by showing circumstances which otherwise account for his failure to produce the witness. There should be no limitation upon this right to explain, except that the trial judge is to be satisfied that the circumstances thus offered would, in ordinary logic and experience, furnish a plausible reason for non-production." 2 Wigmore, Evidence § 290, at 178 (3d ed. 1940).

See also Case v. New York Central Railroad Co., 329 F.2d 936, 937–938 (2 Cir. 1964). On this basis we find the trial court's ruling which limited the defendant's explanation to be error.

The last issue on appeal relates to the prosecutor's misconduct in final argument. In view of the necessity of a new trial on the other issue, it is only necessary to observe that we think the role of the prosecutor upon retrial requires greater concern for fair summation, and we assume he will refrain from repeat-

ing the prejudicial comments used in the previous trial.

The court is notified that the defendant is presently incarcerated in a federal institution; under these circumstances the court orders that our mandate issue forthwith and that the district court be directed to entertain immediately an appropriate motion by counsel for the release of the defendant on reasonable bond pending a new trial.

Judgment reversed and remanded for new trial.