UNITED STATES of America,
Plaintiff-Appellee,

v.

Bruce Loren LATIMER,
Defendant-Appellant.

No. 74–1270.

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 11, 1974.

Decided Feb. 21, 1975.
Rehearing Denied April 14, 1975.

Michael M. Hunter, Asst. U. S. Atty., Salt Lake City, Utah (C. Nelson Day, U. S. Atty., Salt Lake City, Utah, on the brief), for plaintiff-appellee.

Dean R. Mitchell, Salt Lake City, Utah, for defendant-appellant.

Before MURRAH, HILL and HOLLO-WAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

Appellant Latimer appeals his conviction for robbery of a federally insured bank in violation of 18 U.S.C.A. § 2113(a). He was also charged with a § 2113(d) offense of putting in jeopardy the life of a teller but was acquitted of that charge. He presents a number of claims of error. On this record we must uphold the contention that Government counsel made improper and prejudicial comments outside the record during argument, and accordingly reverse and remand for a new trial.

It is convenient to detail the facts briefly in discussing the first issue raised by appellant—the claim of denial of a speedy trial—to which we turn.

### 1. *The speedy trial issue*

Appellant's initial contention is that he was denied his Sixth Amendment right to a speedy trial. He says that delay from arrest to arraignment and from arraignment to trial was unreasonable; that he had requested a speedy trial; that he was prejudiced by impairment of the witnesses' ability to recollect and that, in sum, under the test set out in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, we must hold that his constitutional right to a speedy trial was denied. We treat this claim first because, if we find merit in it, the case must be dismissed. Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56.

The facts briefly are as follows. The South State Street Branch of the First

Security Bank of Utah in Salt Lake City was robbed of about $1200 on April 2, 1973. The robber wore a stocking cap pulled down over his hair and ears. Appellant was arrested later that day and charged with the offense. No money or weapons were found on appellant when he was arrested.

A preliminary hearing was held on April 12, 1973, and appellant was arraigned on July 26. At the arraignment, indictment was waived and appellant pleaded not guilty to the two count information charging the § 2113(a) and (d) offenses. Apparently at that time appellant's counsel stated, in response to the court's inquiry, that he would be ready to try the case within two weeks.[1] Trial was scheduled on the October 1973 calendar. However, for reasons not shown in the record the case was reset and trial was ultimately held on March 12, 1974.[2]

The record contains no motion or other indication of an objection to the delay in trial. Nor, on the other hand, does it reveal any evidence of acquiescence in the delay.

At trial two eyewitnesses identified appellant as the robber. One, however, had not identified him when shown mugshots or at a line-up the day after the robbery, although she did identify him a week later at the preliminary hearing. However, this witness was unable to recall, on cross-examination at trial, that at the preliminary hearing she admitted that some Government employee or police officer had told her that they had had complaints about the defendant before. Another eyewitness, the assistant manager of the bank, at trial could not remember some circumstances about the robbery or his statement to the police about it. These and similar circumstances are pointed to as showing prejudice to the appellant.

The Sixth Amendment guarantee has been the subject of several major opinions by the Supreme Court in recent years. See Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1; United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468; Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101; Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56. The Court has also promulgated an amendment to the Federal Rules of Criminal Procedure, Rule 50(b), requiring plans of the district courts to further the prompt disposition of criminal cases.[3] And most recently Congress has shown its concern for the guarantee by enacting the Speedy Trial Act of 1974, establishing statutory time limits for process-

---

1. Just before the commencement of trial, appellant's counsel moved unsuccessfully to dismiss on the ground of denial of a speedy trial. He asserted that this statement of readiness for trial had been made at the arraignment. (Tr. 5). This assertion was not questioned by the trial judge, who apparently had also presided at the arraignment, and was not controverted by the prosecution at the presentation of the motion, nor is it challenged on appeal. We therefore accept the representation in the consideration of this issue although the transcript of the arraignment is not before us.

2. The trial court's docket sheet states that on January 7, 1974, notice was mailed for calling of calendar and jury trial commencing January 9; that on January 22 notice was mailed for calling of calendar and jury trial commencing on February 4—"(Calendar mailed 1/7/74)"; that on February 4 the case came on for calling of calendar and jury trial on February 4. This entry states: "Counsel indicated its readiness for trial. This matter to be tried in the sequence as calendared."

The docket next shows that jury trial was held on March 12, 1974; that a verdict of guilty was returned; that a presentence report was to be made by the probation officer, with imposition of sentence pending.

On March 20 the matter came on before the court on defendant's motion for judgment of acquittal, which was denied, and imposition of sentence was set for March 25. On March 25 defendant was sentenced to 10 years' imprisonment, the sentence to be consecutive with time already owing for probation violation.

3. The 50(b) Plan for the District of Utah, approved December 14, 1972, established *inter alia,* a 90-day limit for trial after a plea of not guilty for persons not in custody, subject to extension for various reasons. The Rule is not relied on here and our record does not indicate whether any exception to the time limit was or could have been properly invoked for the continuance of trial, but we note the Rule as a measure of reasonableness of delay and of the court's duty to promptly dispose of criminal cases.

ing criminal proceedings. Pub.L.No. 93–619 (January 3, 1975). The statute is, of course, not applicable in deciding this appeal. Reliance here is placed on the constitutional guarantee alone and we must resolve the issue under the decisions of the Supreme Court applying it.

■ The Supreme Court has adopted a balancing test to resolve speedy trial questions, in which the conduct of both the prosecution and the defendant are weighed. Barker v. Wingo, supra, 407 U.S. at 530, 92 S.Ct. 2182. The Court identified four factors which must be considered: the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. Id. at 530, 92 S.Ct. 2182; see United States v. Spoonhunter, 476 F.2d 1050, 1057 (10th Cir.). The factor of prejudice, in turn, is to be assessed in the light of three interests that the speedy trial right is designed to protect—to prevent oppressive pretrial incarceration; to minimize anxiety and concern of the accused; and to limit the possibility that the defense will be impaired, this last interest being the most important. Barker, supra at 532, 92 S.Ct. 2182. In applying this balancing test we must bear in mind that the primary burden is placed on the courts and prosecutors to assure that cases are brought to trial; the defendant has no duty to bring himself to trial. Id. at 529, 527, 92 S.Ct. 2182.

■ The first factor—the amount of delay—is a "triggering mechanism" under the Barker test. Id. at 530, 92 S.Ct. 2182. Until there is some delay which is potentially prejudicial, there is no need for inquiry into the other factors. In our case the delay provokes an inquiry into all the factors and the peculiar circumstances involved. The delay was about 3½ months from arrest to arraignment, where indictment was waived. It was then about 7½ months more until trial on March 12, 1974. The delay is regrettable and exceeded the standards established in the Rule 50(b) plan, unless an extension was justified. Further, the offense does not involve a serious, complex charge that might justify more toleration for delay. Barker, supra at 531, 92 S.Ct. 2182. Thus the delay factor here raises a substantial and serious question, provoking inquiry into the circumstances and the other factors that must be weighed.

■ The reason for the delay is not shown by our record. The Government brief asserts the October trial was rescheduled due to the heavy calendar, with neither party requesting or objecting to the postponement. However, as noted above, at the February 4, 1974, calendar call defense counsel did state he was ready for trial. Unintentional delays caused by overcrowded dockets are to be weighed less heavily than intentional delay, but must nevertheless be considered since the ultimate responsibility for such circumstances must rest with the Government rather than with the defendant. Strunk v. United States, 412 U.S. 434, 436, 93 S.Ct. 2260, 37 L.Ed.2d 56. Still, there was action by the court in setting and calling calendars, and thus we are not inclined to weigh this factor too heavily against the Government, although the showing as to the reason for the delay is not comforting.

■ We have stated what the record shows as to appellant's assertion of his right—counsel's statement at arraignment in July, 1973, that he would be ready for trial within two weeks, and the statement on February 4, 1974, at the calendar call that he was ready for trial. There is, however, in our record no other motion or objection to the delay and rescheduling of trial. We may weigh the frequency and force of the objections. Barker, supra, 407 U.S. at 529, 92 S.Ct. 2182. Here there clearly was no waiver of the speedy trial right, but the frequency and force of the objections revealed in our record are not strong.

■ Potential prejudice is the remaining factor to weigh under Barker. Here there was no oppressive pretrial incarceration. Release on bail was allowed a few days after arrest, we are advised. The factor of anxiety and concern is

present and undesirable. As to the possibility of impairment of the defense, no absence or loss of witnesses and no substantial showing of loss of witnesses' memories are demonstrated, and we are not persuaded that any significant prejudice occurred. See United States ex rel. Walker v. Henderson, 492 F.2d 1311, 1315–16 (2d Cir.), cert. denied, 417 U.S. 972, 94 S.Ct. 3179, 41 L.Ed.2d 1144; but see United States v. Butler, 426 F.2d 1275, 1277 (1st Cir.), cert. denied, 401 U.S. 978, 91 S.Ct. 1207, 28 L.Ed.2d 328. And in these circumstances we decline to apply any rule calling for dismissal based on a reasonable possibility of prejudice, as appellant urges, in addition to his claim of actual prejudice.[4]

In sum, while appellant's claim of denial of speedy trial is substantial and the case is close, we conclude that no denial of appellant's constitutional right is demonstrated.

## 2. The Government's closing argument

Second, we turn to appellant's claim of misconduct by Government counsel during final summation in "testifying as to evidence which had not been admitted or proven at trial," thus denying him a fair trial in violation of due process.

At trial two tellers who observed the robbery testified that they had activated the bank's alarm and camera system during the robbery. However, no pictures taken by the camera were introduced by the Government, and no explanation was given as to why the film was not produced. In final argument appellant's counsel pointed to this omission and argued the inference that the film was not produced because it did not identify appellant.[5]

In rebuttal argument Government counsel replied by stating that the film was not offered because the camera malfunctioned; that the films did not show anything; that they didn't show anybody robbing the bank; and that in fact they showed an FBI agent who arrived quite awhile after the incident. Objection by appellant's counsel was made at the outset of such argument, renewed and overruled by the court.[6]

The Government says the argument was responsive to remarks by appellant's counsel; that prohibiting response to the adverse inference would have been improper; and that admissibility of the films was questionable because of the mal-functioning of the camera.

▰ We must disagree with the Government's argument. We start with the fact that appellant's counsel argued a proper inference. The proof had

---

4. Brief for Appellant at 9–12.

5. Appellant's counsel stated in his argument, Tr. 87:

> And another little bit of evidence that is lacking, the two tellers—the two eye-witnesses—each one of them testified that they activated the camera inside the bank. Now, I ask you, ladies and gentlemen of the jury, why didn't the Government produce those films?
>
> Again, I suggest that logic compels you to draw the inference that the reason they didn't produce the film is because it doesn't identify the defendant.
>
> Now, for example, why do they have those in the banks? Because they are very effective.   .   .   .
>
> \*   \*   \*   \*\'   \*   \*
>
> I submit that the Government' didn't show you that evidence because it didn't help them, one bit.

6. The pertinent portion of the argument in the record follows, Tr. 94–96:

> Secondly, as to the films, the cameras were triggered in error; pictures on the films, we didn't have them into evidence; why didn't we offer them into evidence? Because the camera mal-functioned.
>
> [Appellant's counsel]: Your Honor, I am going to object; he had these films, here; and, if, in fact, they showed the camera mal-functioned, he could have introduced them in evidence.
>
> \*   \*   \*   \*   \*   \*
>
> [Government's counsel]: .   .   .   [A]s I said, the reason the films weren't introduced, they didn't show anything; they didn't show anybody robbing the bank.
>
> [Appellant's counsel]: I will renew my objection.
>
> THE COURT: Overruled.
>
> [Government's counsel]: That is why the Government didn't introduce the films; didn't show anybody robbing the bank. In point of fact, it photographed Mr. James Martin of the FBI, an agent who got there quite a while after the incident.

shown operation of the camera and there was no offer of film or explanation for its non-production. Argument of the unfavorable inference was clearly proper. See Golden State Bottling Co. v. NLRB, 414 U.S. 168, 174, 94 S.Ct. 414, 38 L.Ed.2d 388; International Union (UAW) v. NLRB, 459 F.2d 1329, 1335–39 (D.C.Cir.); II Wigmore, Evidence §§ 285, 291 (3d ed. 1940); McCormick, Evidence § 272 (2d ed. 1972). Thus appellant's counsel made *proper* argument, and it cannot serve as any justification for *improper* response by Government counsel on any theory that there is wide latitude for response in argument.[7] We have recently made it clear that even if improper argument is made by defense counsel, the door is not thereby opened to similar conduct by the prosecution. United States v. Ludwig, 508 F.2d 140 (10th Cir.) (No. 74–1046, filed Dec. 27, 1974).

The argument by Government counsel violated two fundamental rules. First the argument went outside the record and made statements as to facts not proven as to the malfunctioning of the camera and that the film showed the FBI agent after the incident. This was clearly improper. United States v. Peak, 498 F.2d 1337, 1339 (6th Cir.); Reichert v. United States, 359 F.2d 278, 281–82 (D.C.Cir.); Marks v. United States, 260 F.2d 377, 383 (10th Cir.), cert. denied, 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302; and see United States v. Perez, 493 F.2d 1339, 1343 (10th Cir.); VI Wigmore, Evidence §§ 1806, 1807 (3d ed. 1940). Second, the statement put the personal knowledge and belief of the prosecuting attorney on the scales, which is also clearly improper. Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314; United States v. Bettenhausen, 499 F.2d 1223,

1233 (10th Cir.); United States v. Martinez, 487 F.2d 973, 977 (10th Cir.). The defense objections were good and should have been sustained. We must hold that the improper and prejudicial argument calls for a new trial. United States v. Ludwig, 508 F.2d 140 (10th Cir.) (No. 74–1046, Dec. 27, 1974); United States v. Peak, supra; Reichert v. United States, supra.

We have noted the several additional arguments made by appellant. We mention only that concerning the giving of an alibi instruction, which was unrequested and not called for by the evidence. We assume, however, that this and other problems discussed by appellant may be avoided on retrial.

Accordingly the judgment is reversed and the case remanded for a new trial.

HILL, Circuit Judge (dissenting).

I am compelled to respectfully dissent. My distinguished brothers have chosen to upset the conviction for what seems to me to be a trivial error in the trial of the case. Defense counsel in his jury argument invited the occurrence relied upon by the majority. He participated in both the preliminary hearing before the magistrate and the trial under review. On both occasions he heard evidence to the effect one of the witnesses had activated the camera inside the bank. No photographs from this camera were offered by the prosecution. Certainly the defense counsel knew the reason such evidence was not offered. It is undisputed that the camera malfunctioned. Under these circumstances defense counsel was clearly "out of bounds" when he referred to the camera and asked the jury to draw an inference favorable to his client. There is ample undisputed eye witness identification testimony in the record together with an

---

7. It is true that such adverse inferences are open to explanation by circumstances which make some other hypothesis a more natural one than the party's fear of exposure, and that the party is entitled to explain the nonproduction. See II Wigmore, Evidence § 285 (3d ed. 1940); McCormick, Evidence § 272 at 657 n. 31 (2d ed. 1972). However, such explanation may not be accomplished in the

manner attempted here. The nonproduction of evidence which a party would normally be expected to produce may be explained by the testimony of other witnesses, properly sworn and subject to cross-examination, or by the introduction of other evidence at trial. See Case v. New York Central R. Co., 329 F.2d 936 (2d Cir.); United States v. McCaskill, 481 F.2d 855 (8th Cir.).

admission from the defendant that he was in the vicinity of the bank that was robbed about the same time as the robbery took place. In this setting the prosecutor should be permitted to set the record straight. Even better procedure would have been for the trial judge to advise the jury as to the true facts. In any event I fail to find any error prejudicial to the defendant justifying a new trial. This court has many times reiterated that a criminal defendant is entitled to a fair trial which does not necessarily mean a perfect trial. Viewing all of the evidence I must conclude appellant had a fair trial.