**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 20, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BARRY WINFIELD CONE,

Defendant - Appellant.

No. 06-5166
N.D. Okla.
(D.C. No. 04-CR-168-001-HDC)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, HOLLOWAY** and **O'BRIEN**, Circuit Judges.

Barry Winfield Cone appeals from the district court's denial of his motion

to dismiss his indictment based on alleged violations of the Speedy Trial Act and

the Sixth Amendment to the United States Constitution. We affirm.

## I. Background

In March 2003, Cone was on supervised release. On March 28, 2003, the

probation office filed a Superseding Petition on Supervised Release seeking to

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

revoke Cone's supervised release based upon his making false statements to several banks in order to obtain loans. Cone failed to appear for a revocation hearing set for April 18, 2003, and evaded authorities until his arrest on state charges in Tennessee on September 2, 2003. On October 2, 2003, Cone was returned to the Northern District of Oklahoma for an appearance on the revocation petition, at which time he was detained. On July 9, 2004, Cone admitted to violating the terms of his supervised release and was sentenced to thirty-six months imprisonment. He was sent to the federal prison camp at El Reno, Oklahoma, until September 28, 2004, when he was transferred to the Federal Transfer Center ("FTC"). The conditions at the FTC were more restrictive: prisoners could not go outside, visitation was more regulated, and fewer educational and psychological programs were available. Prison officials told Cone he was being sent to the FTC because a detainer was forthcoming; prisoners with detainers are not permitted to remain at El Reno.

On October 7, 2004, the government indicted Cone with thirteen counts of making false statements to a federally insured financial institution for the purpose of obtaining several loans totaling $1,120,317.21 in violation of 18 U.S.C. § 1014. Cone was also charged with thirteen counts of money laundering in violation of 18 U.S.C. § 1957.[1] The government transported Cone to the Northern

---

[1] The allegations in the indictment were similar to those involved in the revocation proceedings.

2

District of Oklahoma for trial on April 3, 2006, approximately a year and a half after he was indicted.

On April 19, 2006, Cone filed a motion to dismiss based on the denial of his statutory and constitutional rights to a speedy trial. The district court held a hearing on the motion on May 26, 2006. At the hearing, the district court received testimony relating the following series of events. On January 10, 2005, a detainer form containing a speedy trial demand was presented to Cone by prison authorities, who had received it from the U.S. Marshal's Service. Cone was expected to indicate on the form whether he demanded a speedy trial and return the form to the prison authorities. The detainer form, however, was defective. Specifically, it stated the Interstate Agreement on Detainers Act (IADA) governed and notified Cone of a speedy trial right but stated both 180 and 1880 days as the applicable time limit.[2] According to Cone's testimony, the mention of a 1880 day limit (a fairly obvious typographical error) confused him. In addition, he testified

_____

[2] The actual language of the form stated:

> Under the IADA, you have the right to be brought to trial within *180* days after you have caused to be delivered to the appropriate U.S. Attorney and the appropriate U.S. District Court, written notice of your request for a final disposition of the charges against you. Because the *1880*-day time limit may be tolled by virtue of delays attributable to you, you should periodically inquire as to whether your written notice of request for a final disposition of the charges against you has been received by the appropriate U.S. Attorney and the appropriate U.S. District Court.

(Appellant's App. at 9 (emphasis added)).

to being confused by the mention of the IADA, as it was his understanding the Speedy Trial Act governed. He stated these uncertainties are why he declined to specify on the detainer form whether he would assert his speedy trial rights and instead elected to file a *pro se* motion asserting them.

According to Cone, he mailed his motion from the prison to the district court and the U.S. Attorney's office on January 29, 2005, after having a prison official – his case manager, Patrine Kelly – notarize it. However, because 1) the prison did not log outgoing mail unless it was later returned for some reason, 2) Cone did not use certified mail, 3) neither the district court nor the prosecutor's office has a record of receiving Cone's motion and 4) Kelly did not testify at the hearing, there is no evidence directly corroborating his testimony. At the hearing, Cone produced a copy of the motion – including Kelly's notary stamp and signature. From this evidence, the district court concluded Cone attempted to send the motion but it was never received. In addition, Cone's testimony indicates he repeatedly asked his "unit team"[3] about his speedy trial rights because he received no response to his speedy trial motion. Cone also introduced an "Inmate Request to Staff Member" which he filed on August 22, 2005, inquiring about his speedy trial requests.

After the district court denied the motion, Cone conditionally pled guilty to

---

[3] A "unit team" is a committee that oversees a particular inmate.

4

one count of making a false statement and one count of money laundering. In a written plea agreement, he expressly reserved the right to appeal the denial of his motion to dismiss. On August 16, 2006, Cone was sentenced to thirty-three months imprisonment. This appeal followed.

## II. Standard of Review

"We review the District Court's interpretation of [the Speedy Trial Act] de novo." *United States v. Stiger*, 413 F.3d 1185, 1199 (10th Cir.), *cert. denied,* 126 S.Ct. 775 (2005). "We review de novo the district court's compliance with the requirements of the Speedy Trial Act and the alleged constitutional violation of the right to a speedy trial." *United States v. Lugo*, 170 F.3d 996, 1000 (10th Cir. 1999). "We accept the district court's factual findings unless clearly erroneous." *Id.*

## III. Discussion

Cone argues the district court erred in denying his motion to dismiss his indictment because the eighteen month delay between the indictment and his transfer to the Northern District of Oklahoma for trial violated his speedy trial rights under the Speedy Trial Act, 18 U.S.C. §§ 3161-3174, and the Sixth Amendment.

A. <u>Speedy Trial Act</u>

Cone argues the government violated § 3161(j) of the Speedy Trial Act. Under that section, the prosecutor, if he knows a person charged with a crime is

5

currently incarcerated, must either 1) promptly obtain the prisoner's presence for trial or 2) promptly file a detainer with the prisoner's custodian and request the custodian advise the prisoner of the detainer and his right to demand a trial. 18 U.S.C. § 3161(j)(1). In addition, § 3161(j)(2) states that if the prisoner's custodian receives a detainer, the <u>custodian</u> must advise the prisoner of the charges and his right to demand trial and must promptly notify the prosecutor if the prisoner demands a trial.

We need not decide whether the government violated § 3161(j) because the Speedy Trial Act simply does not provide for dismissals for violations of its terms. *See* 18 U.S.C. §§ 3161(j), 3162. "Neither § 3161(j) itself nor any other statutory provision provide[s] [for dismissal] for its violation. Section 3162 provides the sanctions for Speedy Trial Act violations, and it addresses the dismissal sanction only in the event of violation of § 3161(b) [requiring the government to file an information or indictment within a specified time after a person has been arrested or served with a summons] or § 3161(c)(1) [requiring the government to bring a defendant to trial within a specified time after the indictment or information has been filed]. In contrast, § 3162 does *not* provide for dismissal in the event of violation of § 3161(j)." *United States v. Dawn*, 900 F.2d 1132, 1135 (7th Cir. 1990). In short, "[t]he language of § 3162(a) contains no ambiguities that might allow its sanctions to be imposed for a violation of § 3161(j)." *United States v. Valentine*, 783 F.2d 1413, 1416 (9th Cir. 1986);

6

*accord United States v. Robinson*, 455 F.3d 602, 606 (6th Cir. 2006), *cert. denied*, 127 S.Ct. 1338 (2007); *United States v. Walker*, 255 F.3d 540, 542 (8th Cir. 2001); *United States v. Lainez-Levia,* 129 F.3d 89, 91 (2nd Cir. 1997); *United States v. Guzman*, 85 F.3d 823, 829 n.4 (1st Cir. 1996); *Dawn*, 900 F.2d at 1135; *United States v. Anderton*, 752 F.2d 1005, 1008 (5th Cir. 1985). The remedy Cone seeks is not available. That ends the debate, regardless of any sympathy we may have for his circumstances.

In the alternative, Cone argues we should instruct the district court to consider sanctioning the prosecutor as authorized by § 3162(b)(4)(C-E). Cone admitted at oral argument, however, he did not move for such sanctions before the district court. We decline to consider in the first instance whether these sanctions might be appropriate. *See Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc.*, 413 F.3d 1163, 1167 (10th Cir. 2005) (arguments not raised in the district court are waived).

B. Sixth Amendment

Cone argues the district court erred in denying his motion to dismiss the indictment based on the government's violation of his Sixth Amendment right to a speedy trial. In *Barker v. Wingo*, the Supreme Court established a balancing test which weighs "the conduct of both the prosecution and the defendant" to determine whether a defendant has been deprived of his constitutional speedy trial rights. 407 U.S. 514, 530 (1972). The four factors to be balanced are: "[l]ength

7

of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  *Id.*  None of these factors is, by itself, "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 533.  Considering the factors individually and collectively, we conclude the length of the delay was presumptively prejudicial but the presumption has been overcome in this case.  We now discuss the factors seriatim.

(1) *Length of Delay*

"The length of the delay is to some extent a triggering mechanism.  Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* at 530.  In *Doggett v. United States*, the Supreme Court noted that depending on the nature of the charges, the lower courts have generally found delay approaching one year to be presumptively prejudicial, thereby triggering the *Barker* balancing test.  505 U.S. 647, 652 n.1 (1992).  In *United States v. Batie*, we held "[d]elays approaching one year generally satisfy the requirement of presumptive prejudice."  433 F.3d 1287, 1290 (10th Cir.), *cert. denied*, 126 S.Ct. 2949 (2006).  Here, the approximate eighteen month delay[4] is presumptively prejudicial and triggers *Barker* analysis.[5]

_____

[4] "The general rule is that the speedy trial right attaches when the defendant is arrested or indicted, whichever comes first."  *Jackson*, 390 F.3d at 1261. Because Cone was indicted in October 2004 and arrested in April 2006, we measure the total delay from the date Cone was indicted.

[5] The government urges us not to apply the *Barker* analysis.  It argues the general one year guideline should not trigger the analysis because of case

8

Having concluded the *Barker* analysis is appropriate in this case, we must now examine the length of the delay as one of the *Barker* factors. To do so, we consider "the extent to which [such] delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004) (quotations omitted). "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531. Cone was not indicted for an "ordinary street crime;" rather, Cone's indictment included twenty-six counts detailing allegations of a scheme to fraudulently obtain several loans totaling $1,120,317.21 from six different financial institutions and money laundering.

Because of the sophistication of the criminal acts and the number and complexity of the charges we conclude the length of the delay in this case is tolerable and thus does not weigh heavily against the government in the overall *Barker* analysis.

(2) *Reason for the Delay*

---

complexity (the number of counts in the indictment and their difficulty) and Cone's refusal to demand a speedy trial on the (erroneous) detainer form it supplied him. Of the cases it cites in support of this contention, only two, *Castro v. Ward,* 138 F.3d 810 (10th Cir. 1998) and *United States v. Bagster*, 915 F.2d 607 (10th Cir. 1990) involve delays longer than one year. The government claims *Castro* held the sixteen month delay was not prejudicial. It is in error. The *Castro* court simply assumed a sixteen month delay was presumptively prejudicial and went on to address the *Barker* factors. 138 F.3d at 820. Similarly, *Bagster* applied all four *Barker* factors. 915 F.2d at 611. We do not see this case as exceptional and thus undertake the *Barker* analysis.

9

The burden is on the government to provide an inculpable explanation for the delay. *Jackson*, 390 F.3d at 1261. "[D]ifferent weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. Thus, a "deliberate attempt" by the government to delay a trial to gain a tactical advantage over the defense will weigh "heavily" against the government, a more "neutral" explanation such as negligence, while weighted "less heavily," will nevertheless weigh against the government, and a "valid reason" will "justify [an] appropriate delay." *Id.* at 531 & n.32.

The government concedes the first three months of the delay should be attributed to it for failing to provide Cone with a detainer form advising him of his right to a speedy trial. We agree. Because the U.S. Marshal's Service[6] negligently retained the form after the U.S. Attorney's Office presented it for delivery to Cone, the reason for this delay should be placed in the "neutral" category.[7]

---

[6] As Cone points out in his reply brief, it is unclear from the record when the U.S. Attorney's office directed the U.S. Marshal's Service to deliver the detainer form to him. Although the government's appellate brief states it "promptly" contacted the U.S. Marshal's Service after the grand jury returned the indictment, the government presented no evidence in the district court to this effect. (Appellee's Br. at 5.) The government's response to Cone's speedy trial motion in the district court omits the word "promptly," and, in any case, the government's response itself is an unverified, unsworn document.

[7] Although the U.S. Marshal's Service was possibly involved in this delay, we attribute any portion of the delay caused by it to the "government." In the Sixth Amendment speedy trial analysis, the "government" includes other entities in addition to the prosecutor. *See Barker*, 407 U.S. at 531 (delays attributable to

10

As for the remaining fifteen month delay, Cone says after receiving the detainer form he was confused about the rights he might waive if he signed it and therefore attempted to file a separate motion with the court asserting his rights approximately two weeks after receiving the faulty detainer form. Indeed, the district court acknowledged the detainer form provided to Cone was "a horrible choice."[8] (R. Vol. III at 54.) First, as the court noted, the form referenced an inapplicable statute, the IADA. *United States v. Walling*, 974 F.2d 140, 141 (10th Cir. 1992) ("The IADA applies to transfers between states, not transfers within a state. Hence, the IADA has no application if a prisoner in federal custody in one federal judicial district faces another federal indictment in a different federal judicial district."). In addition, the form gave conflicting information regarding the amount of time the government had to bring Cone to trial.

Nevertheless, the government argues Cone should be blamed for the resulting delay because he did not demand a speedy trial on the faulty form. In addition, the government seeks to cast doubt on the credibility of Cone's testimony about his efforts to file a separate speedy trial demand. However, it presented no other evidence on the issue. In any event, although the court had no

overcrowded courts weigh against the government).

[8] Although the government argued in response to Cone's motion to dismiss that the IADA *did* apply to Cone, it appeared to abandon the argument when pressed by the district court. The government does not address the issue in its appellate briefing.

11

record of actually receiving the motion, it credited Cone's testimony that he attempted to place a motion demanding a speedy trial in the prison's legal mail system.

Although the government did not actively contribute to the fifteen month delay, the government's furnishing of the faulty form – which confused Cone about his rights – renders it more responsible for this delay than Cone. Had the government provided him the correct form in the first instance, the uncontradicted evidence demonstrates it is likely he would have asserted his right on the detainer form, thus eliminating the delay caused when his separate motion was apparently lost in the mail.

More to the point, for 18 months the government did nothing to move the case to trial, as was its responsibility. "A defendant has no duty to bring himself to trial; the State has that duty . . . ." *Barker*, 470 U.S. at 527. In that regard the government was negligent and negligence, while not as egregious as a deliberate attempt to impair the defense, is "on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett*, 505 U.S. at 657. Regarding the weight to be assigned the government's negligence, the *Doggett* Court went on to say that the weight "assign[ed] to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus our toleration of such negligence varies inversely with it protractedness . . . and its consequent threat to the fairness of the

12

accused's trial." *Id*. The negligent delay of 18 months in this case is dramatically less than the 6 year delay in *Doggett*. In our analysis, using the *Doggett* sliding scale approach, the 18 months would be on the more tolerable end of the scale and would not have presumptively posed an inordinate threat to the fairness of a trial in Cone's case, had he chosen that route instead of a guilty plea.

(3) *Assertion of Right*

"The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. "A pro se criminal defendant does not have to make a procedurally perfect assertion of his speedy trial rights, but must make a 'reasonable assertion' of the right so as to put authorities on notice of his Sixth Amendment claim." *Douglas v. Cathel*, 456 F.3d 403, 418 (3d Cir. 2006). The evidence demonstrates Cone asserted his right on several occasions. As we have stated, the district court found he prepared and mailed a demand for speedy trial in January 2005, approximately two weeks after receiving the faulty detainer form. In August 2005, he made a written request about the status of his demand for a speedy trial to his "unit team" at the prison. In addition, Cone testified he made verbal requests to prison authorities about the status of his speedy trial request. This factor significantly favors Cone because he promptly and repeatedly sought to inform the authorities of his desire for a speedy trial. *See*

13

*United States v. Bass*, 460 F.3d 830, 837 (6th Cir. 2006) (defendant sufficiently asserted right to speedy trial in three separate motions over approximately three years), *cert. denied,* 127 S.Ct. 2959 (2007); *cf. United States v. Latimer*, 511 F.2d 498, 501 (10th Cir. 1975) (where counsel twice stated client was ready for trial, the "frequency and force of the objections" to rescheduling delays was "not strong" over an eleven month period).

(4) *Prejudice*

We begin by noting it is unclear whether Cone is required to make a particularized showing of prejudice. In *Doggett*, the Supreme Court stated "[w]hen the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review [i.e., six years], and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." 505 U.S. at 658 (citations and footnotes omitted). This rule would seem to relieve a defendant of any need to show particularized prejudice when the delay is sufficiently lengthy.[9] However, in *Jackson*, we noted "*Doggett* does not definitively determine whether a delay of less than six years will ever relieve a defendant of the need to make a particularized showing of prejudice. Other

---

[9] On the other hand the defendant must show specific prejudice to his defense if the government exercises reasonable diligence in bringing him to trial. *Doggett*, 505 U.S. at 656.

14

circuits, when applying *Doggett* in cases involving delays of less than six years, have more clearly defined the minimum amount of delay necessary to relieve a defendant of the need to make a particularized showing of prejudice." *Jackson*, 390 F.3d at 1264 n.4.  However, because we were examining the issue under the more limited habeas standard of review, we expressly left open the question whether a delay of less than six years can ever be long enough to relieve a defendant of the need to illustrate prejudice.  *Id.*

Perhaps realizing a delay of eighteen months is a far cry from the six year delay in *Doggett*, Cone proceeds to analyze the prejudice prong as if he must show particularized prejudice and advances two arguments to demonstrate such prejudice.[10]  First, Cone argues he was prejudiced by being placed in the FTC where he was deprived of a number of services which were previously provided at El Reno.  Second, he claims prejudice because he was foreclosed from requesting the instant sentence run concurrently with the sentence he was serving for violating the conditions of supervised release because the latter sentence was almost over before trial proceedings in this case commenced.[11]

---

[10] Because Cone does not argue he need not show particularized prejudice (apparently he assumes he must do so) and the parties have not briefed the issue, we assume, without deciding, he must demonstrate actual prejudice.  We decline to draw any bright line rules on how long a delay must be to relieve a defendant of demonstrating particularized prejudice.

[11] According to the government, since Cone was transferred before officials actually delivered the detainer form to him, some reason other than the detainer must account for the transfer.  That might be a fair inference but the record does

15

Prejudice should be assessed in the light of the interests which the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Most significantly, Cone's briefs make no claim to an impairment of his ability to defend against these charges.[12] On the other hand he does complain of a form of pretrial anxiety which, he says amounted to oppressive pretrial incarceration.[13] Because his "pretrial" incarceration was spent serving a separate sentence for violating supervised release conditions, any prejudice must be

not support it. Cone stated he was moved because the prison officials were notified he "had a detainer coming;" the government produced no contrary evidence. (R. Vol. III at 8). The government also claimed at oral argument that Cone was transferred to the FTC because he was a fugitive. While Cone sought to evade authorities prior to his most recent arrest, nothing in the record suggests his fugitive status was a reason for the transfer. .

[12] This factor stands in sharp contrast to (and distinguishes) *Doggett*, who "claims this kind of prejudice [inability to prepare his case], and there is probably no other kind that he can claim, since he was subjected neither to pretrial detention nor . . . to awareness of unresolved charges against him." *Doggett*, 505 U.S. at 654.

[13] "[Cone] was forced to spend virtually his entire revocation sentence in a high security prison facility rather than at a low security prison camp . . . . The difference between the two facilities was marked. He had no access to the outdoors at the transfer center. Medical, employment and education facilities were much more limited. He could not have visitation with his family." (Appellant's Br. at 36-37.)

substantial. *Perez v. Sullivan*, 793 F.2d 249, 254, 256 (10th Cir. 1986) ("Once a defendant has been convicted . . . the necessity of showing substantial prejudice would dominate the four-part balancing test." ); *see also United States v. Yehling*, 456 F.3d 1236, 1245-46 (10th Cir. 2006) (in context of *Barker* prejudice, contrasting interests of a free citizen with those of a convicted one).

Cone claims prejudice from being placed in a more restrictive facility and we credit his claim.[14] But that does not necessarily carry the day. In a related context, the Supreme Court has clearly held no liberty interest is implicated under the Due Process Clause when a prison places a prisoner in a higher security facility. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Because Cone's liberty interests were significantly diminished due to his conviction for violating the terms of his supervised release, his relocation to the FTC does not present the same liberty concerns as pre-trial incarceration would for a free citizen. Moreover, he was only in the more restrictive facility for eighteen months. *Cf. Barker*, 407 U.S. at 534 (even for one not yet convicted, ten months of pretrial incarceration resulted in "minimal" prejudice). Thus, we fail to see the substantial prejudice required by *Perez*.[15]

---

[14] The Supreme Court's observation about the debilitating effect of delay on prisoners is not lost on us. *Strunk v United States*, 412 U.S. 434, 439 (1973), *Moore v. Arizona*, 414 U.S. 25, 27 (1973), and *Smith v. Hooey*, 393 U.S. 374, 379 (1969).

[15] The Third Circuit has held that incarceration in a facility which did not provide rehabilitation programs and limited recreation time and visiting privileges

17

We also reject Cone's claim of prejudice by being foreclosed by delay from seeking a concurrent sentence. Our decision in that regard is fact specific; the loss of an opportunity for a concurrent sentence could be irreversibly compromised in another circumstance. But we must look to "what is" rather than worry about "what if." Cone could have moved for an adjustment in his sentence in this case to compensate for the opportunity he claims to have lost. Even if the sentencing guidelines under which Cone was sentenced did not explicitly provide for a downward departure on these facts,[16] he could have requested a variance now that the guidelines are advisory.[17] That leaves his lost opportunity argument very hypothetical.[18] Unlike cases involving different courts, different

---

constituted prejudice under the *Barker* analysis. *Burkett v. Fulcomer*, 951 F.2d 1431, 1443 (3d Cir. 1991). We are not prepared to embrace *Burkett* and need not because it is not comparable to this case. Burkett was incarcerated in a more restrictive facility for almost forty months. *Id.* at 1435.

[16] The Presentence Investigation Report (PSR) used the 2001 edition of the United States Sentencing Guidelines. Later editions include §5K2.23, which arguably would permit a downward departure for Cone's discharged term of imprisonment.

[17] *United States v. Booker*, 543 U.S. 220, 245-46 (2005). A departure occurs "when a court reaches a sentence above or below the recommended Guidelines range through application of Chapters Four or Five of the Sentencing Guidelines." *United States v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007). A variance occurs "[w]hen a court enhances or detracts from the recommended range through application of § 3553(a) factors." *Id.*

[18] The dissent sees it differently, pointing to cases in which the Supreme Court "recognized that concurrent sentence impairment *does* constitute prejudice." Dissent at 4. The dissent cites *Strunk v. United States*, 412 U.S. 434, 437-38 (1973) and *Smith v. Hooey,* 393 U.S. 374, 378 (1969). Indeed, the

jurisdictions or different sovereigns, e.g. *Moore v Arizona, 414 U.S. 25 (1973); Strunk v United States*, 412 U.S. 434 (1973); *Smith v Hooey,* 393 U.S. 374 (1969), both of Cone's sentences were imposed by the same court, affording a unique opportunity for individualized treatment of his crimes and circumstances. Had the trial judge been inclined toward a concurrent sentence he could have, consistent with 18 U.S.C. § 3553, adjusted this sentence to obtain that result. The fact that he didn't adjust the sentence in spite of his criticism of the government's delay (and its lame excuses) speaks volumes. Cone's commission of multiple, serious criminal acts of fraud while he was on supervised release for similar crimes made

---

Supreme Court allowed for the possibility of such prejudice, but its pronouncements are decidedly less robust than the dissent suggests. In *Smith*, a pre-*Barker* case, Texas did not attempt to bring the defendant to trial for six years because he was serving a federal sentence. In discussing the corrosive effect of delay the court recognized that trial delay might cause the loss of the possibility of a concurrent sentence and he might be incarcerated longer because of the delay and the conditions of confinement might be worse. *Smith*, 412 U.S. at 378.

     *Strunk*, a post-*Barker* case, addressed a very narrow issue – the remedy when a violation of a constitutional right to a speedy trial had occurred – specifically whether a remedy short of dismissal would be sufficient. Citing *Smith*, the Court observed that emotional stress can be presumed from the uncertainties flowing from prolonged delay. At the same time it recognized, as did *Smith*, that many of those stressors may be less for a prisoner already confined. Here, of course, the issue is whether a constitutional violation occurred and to that end the *Barker* court prescribed flexible standards based upon practical considerations.

     We are compelled "to approach speedy trial cases on an ad hoc basis." *Barker*, 407 U.S. at 530. To that end we must be more concerned with whether, in this case, there was a realistic loss of an opportunity for a concurrent sentence. While the opportunity to argue for a concurrent sentence may have been impaired, the opportunity to obtain essentially the same result remained available to Cone.

19

him a most unlikely candidate for a concurrent sentence.

(5) *Balancing of Factors*

"We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. . . . [There is no] violation of the right to speedy trial unless the circumstances of the case are such that further delay would endanger the values the right protects." *Barker*, 407 U.S. at 521-22. "Thus, as we recognized in *Beavers v. Haubert*, *supra*, any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case: 'The right of a speed trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.'" *Id*. at 522 (citation omitted). Thus, our approach must be circumspect, practical and analytical, not theoretical, hypothetical or speculative. "[The four *Barker* factors are] related and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process . . . with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." *Id.* at 533.

On balance, the delay here was mostly attributable to the government, but its acts were negligent, not malevolent – they were not orchestrated to obtain a tactical advantage. And Cone made efforts to assert his speedy trial rights. Nevertheless, the prejudice to Cone's defense was nil and the collateral prejudice

20

he presumptively suffered was, as a practical matter, negligible. Finally, the delay, while substantial, was not egregiously so under the circumstances of this case. How does that compare to *Barker*?

The delay here was 30% of that in *Barker*. Regarding the reason for the delay, however, the cases are similar. Here, almost all of the 18 month delay is attributed to government's negligence, and in *Barker* all but 7 of the 60 months delay in *Barker* could be attributed to government malaise. Regarding the assertion of the speedy trial right, the cases markedly differ. Barker's speedy trial demands were lackluster and sporadic; Cone's were persistent. Barker spent 10 months incarcerated and about 50 months released on bond (but still subject to the possible (presumed) collateral prejudice decried in *Smith, Strunk, Moore* and *Barker* itself). Nevertheless, the *Barker* Court considered the prejudice minimal. Cone was incarcerated for another crime so prejudice to him comes down to collateral consequences (less hospitable environment and lost opportunities) he may have suffered. The record in *Barker* established that Barker was not really interested in a speedy trial, but was merely an opportunist. The latter was a very important factor for the Court and finds no parallel here. The record in *Barker* also established that Barker was not deprived of his right to a speedy trial.

In most respects Barker's claim to a violation of his speedy trial rights was superior to Cone's; the delay was significantly lengthier and Barker was subject to 10 months of pretrial incarceration without a conviction. The difference lies in

21

the demands to go to trial. Barker's were sporadic and insincere; Cone's were persistent and sincere. That factor alone cannot tip the balance. Applying all of the Barker factors to this case, assigning weight to them as we have explained and comparing them to the *Barker* circumstances we must conclude that Cone's claim of a violation of his constitutional right to a speedy trial must fail.

## IV. Conclusion

The district court properly denied Cone's motion to dismiss.

**AFFIRMED**.

ENTERED FOR THE COURT

Terrence L. O'Brien
Circuit Judge

No. 06-5166, *United States v. Barry Winfield Cone*

**HOLLOWAY**, Circuit Judge, dissenting.

The "right to a prompt inquiry into criminal charges is *fundamental*[,] and the duty of the charging authority is to provide a prompt trial." *Dickey v. Florida*, 398 U.S. 30, 38 (1970) (emphasis added). Indeed, *Kloper v. North Carolina*, 386 U.S. 213, 223 (1967), "established that the right to a speedy trial is 'fundamental' and is imposed by the Due Process Clause of the Fourteenth Amendment on the States." The Court emphasized that "the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment." In this case, Defendant Cone was denied this fundamental right. The majority applies the correct authority – the four-part analysis of *Barker v. Wingo*, 407 U.S. 514, 530 (1972) – but comes to a conclusion with which I cannot agree. Because I am convinced that all four factors favor Defendant, I would hold that the convictions must be reversed and the charges dismissed.[1] I therefore respectfully dissent.

In undertaking analysis of the *Barker v. Wingo* factors, courts should always be mindful of the admonition in that case that "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." 407 U.S. at 522. For the most part the majority has followed this important precept and focused on the specifics of this case, but as I will point out

---

[1] "In light of the policies which underlie the right to a speedy trial, dismissal must remain, as *Barker* noted, 'the only possible remedy.'" *Strunk v. United States,* 412 U.S. 434, 440 (1973).

*infra*, I am convinced that the principle is disregarded in the majority's analysis of the prejudice prong of the framework.

I agree with the majority that the almost 18 months' delay in this case is presumptively prejudicial and that we accordingly must proceed to apply the remaining three factors from *Barker*. The majority finds that the length of the delay in this case is mitigated by the complexity of the charges involved. I disagree. The government has offered this only as an excuse, not as a reason for the delay. That is, it is clear that the delay in this case was solely due to government negligence. There is absolutely nothing in the record to support the notion that the prosecution needed more time because of the complexity of the case. Indeed, the record affirmatively suggests that the complexities of the case had been managed long before the delay began. As the majority opinion notes, in March 2003 – almost eighteen months before the indictment was issued and three years before Defendant was brought before the court on these charges – the government had prepared a petition to revoke Defendant's supervised release on his previous conviction. The revocation petition and the subsequent hearing were, as the majority notes, based on allegations similar to those in the October 2004 indictment.

Because the government offers only the generic argument that complexity may mitigate delay in *some* cases, and not a scintilla of evidence that it was a factor in *this* case, and in light of the affirmative indication in the record that

complexity was *not* a factor here, I cannot agree with the majority's reliance on the supposed complexity of the charges as mitigating the length of the delay here.

I agree with the majority that the delay here must be attributed to the government and must therefore weigh in favor of Defendant in this analysis.[2] To me, the government's negligence in this case weighs against it more heavily than in other cases because of the multiple acts of negligence involved. First, the prosecutor failed in his duty to effect prompt service of the detainer. Second, and of much importance in my view, the prosecutor failed to insure that Defendant would be provided with *correct* and effective notice of his rights in the papers that were served, instead serving a document that could only have confused Defendant, as he testified that it did, and which the district judge characterized as a "horrible choice."[3] Third, the prison officials failed on a number of occasions to perform their statutory duty to notify the prosecutor that Defendant had invoked his speedy trial rights. *See* 18 U.S.C. § 3161(j)(2).

The majority correctly notes that the Defendant made multiple attempts to assert his right to a speedy trial, beginning within days of the service on him of

---

[2]I acknowledge and agree that negligence weighs less heavily against the government than deliberate delay would.

[3]As the majority notes, it is unclear as to the extent to which the marshal's service may have been responsible for the delay in serving the notice of detainer and in the "horrible choice" of the form selected. But I agree with the majority that these facts must all weigh against the government in any event.

-3-

the incorrect, confusing form provided by the government.[4]

Thus, the panel is in unanimous agreement that the first three factors from *Barker v. Wingo* favor Defendant, even if we are not totally in agreement as to the weight to be given to these factors. But I cannot agree with the majority that the fourth factor – prejudice to the Defendant – favors the government and leads to the conclusion that no remediable constitutional violation occurred here. I would hold that Defendant has demonstrated substantial prejudice in the loss of the opportunity to argue for a concurrent sentence and in having been subjected to harsher conditions of confinement for almost 18 months as a result of the government's negligent failure to perform its duties. As the order and judgment (at note 13) observes, the Appellant's Brief set out the marked differences of the two facilities: *no* visitation with his family, no access to outdoors at the transfer

---

[4]The district court summarily rejected Defendant's constitutional claim, citing *Pietch v. United States*, 110 F.2d 817, 819 (10th Cir. 1940), and stating that the claim must fail because "no demand was ever presented to the Court." The majority correctly gives no credence to the government's argument based on *Pietch*, but apparently it is necessary to point out that the district court clearly erred in its reliance on that case.

In *Pietch*, we held that a "person charged with a crime cannot assert with success that his right to a speedy trial guaranteed by the Sixth Amendment . . . has been invaded unless he asked for a trial." 110 F.2d at 819. That holding was disapproved in *Barker v. Wingo*, which held that failure to invoke the right is merely one factor to be considered in determining whether a constitutional violation has occurred. 407 U.S. at 522-30. Nevertheless, we have since said that, at least in certain circumstances, this factor may be "most important." *United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006). In this case, however, the majority properly credits Cone's efforts to demand a prompt trial and avoids the district court's error of giving dispositive weight to the fact that, despite Cone's efforts, the trial court remained unaware of his demand.

-4-

center, more limited medical, employment and educational facilities.

The majority dismisses out of hand Defendant's contention that he was deprived of the opportunity to request a concurrent sentence and that this constitutes prejudice under the *Barker* framework. The majority argues that Defendant still could have asked for other forms of relief. But this is not, I think, sufficient to extinguish the prejudice in light of the fact that the Supreme Court has twice recognized that concurrent sentence impairment *does* constitute prejudice. *See Strunk v. United States,* 412 U.S. 434, 437-38 (1973); *Smith v. Hooey*, 393 U.S. 374, 378 (1969). Both of those cases of course preceded the structured sentencing regimen of the Guidelines, so it must be presumed that in each case the court would have had the discretion to mitigate the prejudice sustained by the loss of the opportunity to request concurrent sentencing. But the Court did not cite that discretion as mitigating a finding of prejudice. Thus, the reliance of the majority in this case on the still-limited discretion federal district courts exercise post-*Booker* is not persuasive.

I would also hold that Defendant has demonstrated prejudice in the fact that he was, for almost 18 months, subjected to harsher conditions of confinement because the government notified the prison officials that a detainer was coming, but then failed in several respects to fulfill its duties to Defendant. The Court has trenchantly observed that "no court should overlook the possible impact pending charges might have on his prospects for parole *and meaningful rehabilitation."*

*Moore v. Arizona*, 414 U.S. 25, 27 (1973) (emphasis added). *See also Strunk*, 412 U.S. at 439; *Smith*, 393 U.S. at 379.

The majority acknowledges the Supreme Court's teaching on this point, assuring us that the point "is not lost on us." But I fail to see that the majority gives this prejudice suffered by Cone any real weight at all in its analysis. If it did, I fail to see how it could conclude that Cone has failed to show a constitutional violation when all four *Barker* factors weigh for him and against the government.

The majority justifies its approach on two grounds, neither of which is persuasive. First, the majority cites *Perez v. Sullivan*, 793 F.2d 249 (10th Cir. 1986), as holding that Defendant must show "substantial prejudice" because he was already incarcerated when the current charges were filed. I would distinguish *Perez* rather than apply it. I think that we must distinguish the case because applying it to Cone's circumstances as the majority does conflicts with the general instruction of *Barker v. Wingo* to treat each case on its specific facts. *See Barker*, 407 U.S. at 522. Thus, to apply the holding of *Perez* in circumstances that are different in an important sense without considering that difference is to err.

More importantly, the majority's holding of no prejudice conflicts with the specific teachings about prejudice from the decisions in *Smith v. Hooey*, *Strunk v. United States*, and *Moore v. Arizona*. But distinguishing *Perez* avoids this

-6-

departure from the Court's teachings. *Perez* is distinguishable because in *Perez,* as in *United States v. Yehling*, 456 F.3d 1236 (10th Cir. 2006), which the majority also cites, the person claiming denial of his speedy trial rights was incarcerated *on the very charge at issue*, having already been convicted or having pleaded guilty *in that case*. But as I have shown, *supra*, three cases from the Supreme Court – *Smith v. Hooey*, *Strunk v. United States*, and *Moore v. Arizona*, all of which arose in contexts like those of Defendant Cone – teach that a person *incarcerated on a previous conviction* may suffer prejudice from the loss of the opportunity to argue for a concurrent sentence and the loss of opportunities for rehabilitation. This of course is exactly the prejudice shown by Defendant in the instant case. The language of *Perez* is in obvious tension with these Supreme Court cases, but because *Perez* is distinguishable on its facts, and because we are to analyze speedy trial issues in light of the specific circumstances in each case, it is not necessary to consider whether *Perez* went astray; it is simply necessary to follow the pertinent teachings of the Supreme Court.

Moreover, I think that the majority has disregarded the Supreme Court's clear admonition (elsewhere quoted in the majority opinion) that none of the four factors discussed by the Court is "necessary or sufficient" to establish that the constitutional right has been violated. *Barker v. Wingo*, 407 U.S. at 533. The majority has made prejudice an indispensable element by its analysis. This violates the teaching of *Barker v. Wingo*, and in my view is not required by *Perez*

-7-

*v. Sullivan* (even if I were to assume that our court could have validly interpreted *Barker v. Wingo* differently, which of course would be wrong). In any event, Defendant *has* shown substantial prejudice in my view, and the greater error of the majority is to dismiss his showing of prejudice.

The majority also ignores those teachings regarding prejudice by vainly attempting to bolster its analysis with the weak and unexplained proposition that the Court's holdings in *Wilkinson v. Austin*, 545 U.S. 209 (2005), and *Sandin v. Conner*, 515 U.S. 472 (1995), arise in a "related context." The questions presented in those cases regarding liberty interests under the Due Process Clause may bear some relation to the issues in the present case, but the Court gave no indication in those decisions that it was questioning its statements in *Smith v. Hooey*, *Strunk v. United States*, and *Moore v. Arizona*, all of which arose under the Constitution's speedy trial guarantee, and not in a "related" context.

In sum, I conclude that all four factors of the *Barker* analysis favor Defendant. His constitutional right to a speedy trial was denied him,[5] and as a result he suffered exactly the kind of prejudice that the Supreme Court has noted is likely to occur when a prisoner is denied the right to a prompt adjudication of new charges against him. Because I believe that Defendant has established the violation of this core constitutional right, it necessarily follows that I would hold

---

[5]In light of that fundamental infringement, I do not express a view about the claim under the Speedy Trial Act.

that the charges must be dismissed.  *See* note 1, *supra*.  The Supreme Court has instructed that where such a Sixth Amendment violation has occurred, as I find, dismissal is "the only possible remedy," not a matter for the weighing of discretion, as the Majority appears to do.  *Barker*, 407 U.S. at 522; *Strunk*, 412 U.S. at 440.

I respectfully but emphatically dissent.